## FIRST & CITIZENS NATIONAL BANK OF ELIZABETH CITY, N C v SEIP et

Ohio Appeals, 4th Dist, Ross Co

Decided July 27, 1931

Mr. John P. Phillips, Mr. John P. Phillips, Jr., Chillicothe, and Messrs. Wilson & Morrow, for plaintiff.

Mr. Walter W. Boulger, Chillicothe, and Mr. Wilby G. Hyde, Chillicothe, for defendants.

**MIDDLETON, J.**

The evidence in this case does not support the claim of the defendants that John Seip had received an advancement from his father in the sum of $21,000. All of the evidence adduced by them in support of this claim tends to prove, if it establishes anything, that at the death of his father John Seip was indebted to his father in the sum of $21,000 or had received that amount from his father as a gift. There is evidence to the effect that the remaining two sons, David Seip and George Seip, were also indebted to their father in a substantial amount at the time of the latter's death. Be that as it may, the judgment of the Probate Court approving the final account of the executors is like the judgment of any other court of competent jurisdiction. It is conclusive against all persons involved who have legal notice, and the judgment approving the account continues as a bar to any claim of the heirs for any money rights growing out of the settlement of the estate until such judgment is reversed or is attacked for fraud or mistake.

"Orders or decrees settling final accounts entered after giving notice in the manner required by statute are conclusive evidence that the amounts found to be due thereby correctly represent the indebtedness of the party whose account is settled to the estate in his care; and are res adjudicata as to all matters directly involved in the accounting and necessarily determined thereby, not only as to the representative himself but as to all parties to the proceedings and persons as to whom jurisdiction has been acquired in the manner prescribed by law, including those interested as legatees, distributees and creditors." 2 Freeman on Judgments (5th Ed.), §820.

The general rule in this respect is well stated in 11 Ruling Case Law, 102, §104, as follows:

"As a general rule a Probate Court has no power to reopen an estate which has once been administered and closed. And an executor or administrator is no longer subject to the jurisdiction of the Probate Court when, in obedience to a valid decree of that court, he has made final distribution and has been discharged."

It is apparent that the inventory filed in the settlement of this estate was not a correct inventory if the claims of the defendants are supported by the evidence. But this court has no jurisdiction to interfere with the decree of the Probate Court in the settlement of this estate. It is equally apparent that the account filed by the executors, which purports to show that they had received and administered approximately $14,000, is not correct if the defendants' claim is true. §10691, GC, being §6069 Revised Statutes, at the time of the settlement of this estate, provides that an administrator or executor who is indebted to the estate must charge himself with that indebtedness in cash. John Seip did not do this, and his brothers and sisters must be held to have known that he did not comply with the law. In the case of Stubblefield v McRaven, 13 Miss. (5 Smedes & M.), 130, 43 Am. Dec., 502, the application of the doctrine of res adjudicata to judgments of Probate Courts making final disposition of estates is approved, and that case is followed by many other cases subsequently recognizing the same principle. The judgment of the Probate Court in the instant case necessarily included a finding that all of the personal estate of Charles Seip was accounted for and settled. There is nothing in the record to show otherwise, and if this is not true, that fact was known only to the heirs and the executors. The evidence indicates that this settlement was made by John Seip, not only with the full knowledge of the other heirs, but by their consent. When his sister, after the institution of the partition suit, conveyed her undivided one-sixth interest of the remaining estate, after she had received her share, she conveyed to John Seip the undivided one-fifth interest in such one-sixth interest in such remaining property, and this conveyance was placed on the official records of this county.

It follows from what has been said that the defendants are estopped from pleading

any consideration for the transfer of the property by John Seip to the remaining defendants. But, if this were not so, it is beyond question that for more than eighteen years these heirs permitted John Seip to possess this property in his own name, as shown by the records in the Probate Court and recorder's office of this county. It is in evidence that he represented to the agent of the plaintiff in this case that 'he was the owner of about $100,000 of real estate in Ohio, and that it was part of an estate worth $300,000 jointly owned by him and his brothers and sisters. Equity will not permit these defendants, after having by their own fault made it possible for John Seip to obtain credit and financial standing to come in at this time and say that, while all these eighteen years he was the ostensible owner of the property in controversy here, and according to the public records was the actual owner thereof, he was not in fact such owner, and that during all that time he was holding the property in trust for them.

We are persuaded that the defendants have no defense in this case unless it is by way of the statute of limitations. Before, however, referring to that phase of the case it must be observed that we are convinced that, when John Seip made the deeds attacked in this proceeding he was insolvent, and that he knew he was insolvent, and that it was because of this situation that he made the transfers. If it had not been necessary for him to place himself beyond the reach of his creditors at the time he made these conveyances, we are in doubt as to whether such conveyances would ever have been made. His right to this real estate had remained too long unchallenged to impress a court of equity with the belief that any of the remaining defendants ever seriously considered any further adjustment of their father's estate. At any rate, we have no difficulty in concluding that the transfer of this property was without consideration and made for the purpose of preferring the brothers and sisters of John Seip to his other creditors, and for the further purpose of delaying such creditors.

It appears that the claim of the plaintiff in this action grew out of a contract between the defendant John Seip and one E. H. Craig, on the one hand, and W. S. Taylor, on the other. By the terms of this contract, Seip and Craig agreed to pay Taylor $46,500 in installments of $10,000 each, and the performance of said contract was secured by Seip and Craig hypothecating a large number of shares of stock in a real estate project near Elizabeth City, North Carolina. This real estate project was being carried on under the name of the Providence Farms, Inc. It is not necessary to go into further details in respect to this real estate matter except to say that Taylor hypothecated this contract and the stock as collateral security for a debt to the plaintiff. So that the plaintiff is attempting in this action to enforce what was primarily an obligation of Seip to Taylor. This contract with Taylor was signed under date of October 6, 1920. The record discloses that some time in May, 1922, Taylor filed an action against John Seip in the Superior Court of Elizabeth City, North Carolina. In this action Taylor sought to set aside the transfer of the same property involved in this case upon the same grounds and for the same reasons as are urged by the plaintiff in this action. It seems that for some reason that proceeding was dismissed, but we do not have a full transcript of the record made in that case, nor has this court heard any explanation as to why that action was instituted and for what reason it was dismissed. It seems strange, to say the least, that an action of that kind could be brought in a city of the population of Elizabeth City and the pendency of such action not be known to the plaintiff in this case, considering the intimate business relations between the plaintiff bank and Taylor. At the time that action was brought, if we are to believe the evidence of the plaintiff, the plaintiff was the holder and possessor of the claim against Seip on which Taylor founded his right of action. It seems not only possible, but entirely probable, that Taylor did not bring that action without the knowledge of some agent or representative of the plaintiff bank. Three officers of the bank, however, testified that they had no knowledge of the conveyances in question until some time in 1925 or 1926. It appeared that counsel for the defendants were unaware of the depositions taken, since the case came to this court tending to show this want of knowledge on the part of the plaintiff. These depositions appear to have been taken after due notice, but the witnesses were not cross-examined. There is not a particle of testimony adduced by the defendants upon what we consider to be the only defensive issue in the case. Under these circumstances, we conclude that, if the defendants desire, they may have until the 1st day of September to take depositions bearing upon this defense. If the defend-

ants do not desire to secure further evidence, a decree will be entered for the plaintiff as prayed for in the petition.

Decree accordingly.

MAUCK, PJ, concurs.
BLOSSER, J, not participating.