John W. **BATH**, James H. Benson and Catherine E. Benson, C. Rex Beougher and Laurie Beougher, Maurice Faler and Helen Faler, Terry Happel and Joan Happel, G.M. Harrison and Mary Harrison, H.S. Jackman and Jeanne Jackman, R.R. Lansang and Clare Lansang, Fred Ockers and Sarahmae Ockers, Robert Pickett and Cecilia Pickett, Tom Smith and John Scott, d/b/a Scith Enterprises, a Wyoming partnership; Oscar Tellefson, William Wilson and Nancy Wilson, Paul Yedinak and Nancy Yedinak, Plaintiffs,

v.

**BUSHKIN, GAIMS, GAINES AND JONAS,** a California corporation formerly known as Bushkin, Kopelson, Gaims, and Gaines, Henry I. Bushkin, Mrs. Judy B. Bushkin, Arnold Kopelson, John Gaims, Frederic N. Gaines, Jerry K. Staub, Metro Productions, Inc. a California corporation; Producer's Liaison Corporation, a California corporation; Trafalgar Acceptance Corporation; Michael Miller, Patricia Kathleen Miller, Ralph Smith, Michael Roedeinger and Jane Doe Roedeinger, Jay Anderson, John Does No. 1–20, and Jane Does No. 1–20, Defendants.

No. C87–0149–B.

United States District Court, D. Wyoming.

Sept. 9, 1988.

Dean W. Borthwick, Daniel G. Blythe, Borthwick, Lewis & Blythe, Cheyenne, Wyo. (Borthwick, on brief), for plaintiffs.

Curtis B. Buchhammer, Guy, Williams, White & Argeris, Cheyenne, Wyo. (Buchhammer, on brief), and Gary W. Nevers, Richard E. Hodge, Inc., Los Angeles, Cal. (Nevers, on brief), for defendant Kopelson.

Marc Epstein, Amy L. Rice, Armato, Gaims, Weil, West & Epstein, Los Angeles, Cal. (Epstein & Rice, on briefs), and James L. Applegate, Hirst & Applegate, P.C., Cheyenne, Wyo., for Bushkin, Gaims, Gaines, & Jonas, a partnership, Henry I. Bushkin, John Gaims, Frederic N. Gaines, and Jerry K. Staub.

Wallace L. Stock, Bailey, Pickering, Stock & Welch, Cheyenne, Wyo. (Stock, on brief re Motion for Judgment on the Pleadings), for Michael Miller, Patricia Kathleen Miller and Ralph Smith.

Harold F. Buck, Kline, Buck & Asay, Cheyenne, Wyo., for Michael Roedinger, Kathleen Roedinger, Trafalgar Acceptance Corp. and Metro Production, Inc.

## ORDER ON MOTION TO DISMISS

BRIMMER, Chief Judge.

This matter comes before the Court on the following motions:

1. Defendants Bushkin, Gaims, Gaines & Jonas, Henry I. Bushkin, John Gaims, Frederic N. Gaines and Jerry K. Staub's, (collectively the "Bushkin defendants"), motion to dismiss pursuant to Rule 12(b)(6), Fed.R.Civ.P.

2. The Bushkin defendants' motion to dismiss for lack of personal jurisdiction.

3. The Bushkin defendants' Motion to Dismiss Cross–Claim.

4. Defendants Michael Miller, Patricia Kathleen Miller, and Ralph Smith's, motion for judgment on the pleadings.

5. Defendant Arnold Kopelson's Motion to Dismiss pursuant to Rule 12(b)(6), Fed.R.Civ.P.

6. Defendant Arnold Kopelson's Motion to Dismiss pursuant to Rule 12(b)(2), Fed.R.Civ.P.

7. Defendant Arnold Kopelson's Motion for Change of Venue.

The above motions having duly come on for hearing before the Court and having been argued and submitted for decision, and the Court having duly considered the pleadings on file herein, and the briefs in support of an opposition to the motions, and being fully advised in the premises, FINDS and ORDERS as follows:

Plaintiffs brought this action seeking redress for losses they sustained as a result of their investments in Metro Productions, Inc., ("Metro") a California Corporation. Defendants are the officers and directors of Metro and subsidiaries and other affiliated entities of Metro. Also named in the second amended complaint are individual lawyers employed by Bushkin, Gaims, Gaines & Jonas, a partnership including a professional corporation, as well as the law firm itself. Plaintiffs allege jurisdiction under 28 U.S.C. §§ 1331, 1337; 15 U.S.C. §§ 77a to 77aa; 15 U.S.C. §§ 77a to 77jj; 18 U.S.C. § 1964(c); and, 28 U.S.C. § 1332.

### Introduction

During the period from 1976 to 1978, the defendants or their agents came to Wyoming to promote investment in the creation and marketing of master videotapes of commercial television programs for airing by local television stations. "Investment Units" in the scheme were sold for $90,-000.00. Purchases were made by tendering $7,000.00 in cash and signing a promissory note for the balance of $83,000.00.

Defendants represented that the notes, after a certain period of time, were convertible from recourse to non-recourse notes. Plaintiffs allege, among other things, that the defendants misrepresented the value of the tapes that were to be produced, misrepresented the cash flow to be returned on plaintiffs' investments, and misrepresented the tax benefits to be gained by investing.

The investments were promoted by defendants as tax shelters. Defendants represented that the plaintiffs would be entitled to investment tax credits, accelerated depreciation and other deductions. Defendants represented that investors would receive tax write-offs far in excess of their cash outlay, and would reduce or eliminate their federal income tax liability. The law firm of Bushkin, *et al.* had written an opinion letter to Metro outlining the tax consequences of investing in television productions. This letter was included in the package of offering material sent out by defendants. Plaintiffs relied upon the representations made by the defendants with regard to the tax benefits to be gained by investing and relied upon the opinion drafted by the Bushkin firm.

Once they became investors, plaintiffs were advised to file tax returns claiming depreciation, investment tax credits and other deductions based upon their purchases of investment units. When plaintiffs filed their tax returns in accordance with the advice given by defendants, the Internal Revenue Service challenged, and ultimately disallowed, all of the benefits plaintiffs had sought.

Plaintiffs were advised by defendants, at and before investment, that the Bushkin law firm would defend the tax position urged by defendants. Plaintiffs were told that the law firm would represent any investor challenged by the I.R.S. on tax claims made under the investment program. When the I.R.S. disallowed the credits and depreciation taken by plaintiffs, plaintiffs retained the Bushkin firm to represent them in the ensuing tax litigation.

On April 26, 1986, the Tax Court decided *Porreca v. Commissioner*, 86 T.C. 821

(1986). In *Porreca*, the Tax Court scrutinized an investment scheme nearly identical to the Metro Productions scheme and disallowed investment tax credits and depreciation based upon alleged production costs taken by the investors in that case.

In the wake of *Porreca*, the I.R.S. offered to compromise all of the cases involving Metro Productions' investors. In their settlements with the I.R.S., the plaintiffs were eventually permitted to deduct only their out-of-pocket expenses in connection with the Metro Productions scheme.

Plaintiffs allege that they have never received any income from their investments, and have, in fact, lost everything they invested in Metro Productions. They seek recovery under ten separate claims for relief, alleging: securities fraud under §§ 12(1), 12(2) and 17(a) of the Securities Act of 1933; violations of the Racketeer Influenced and Corrupt Organizations Act, ("RICO") 18 U.S.C.A. § 1964; violations of Rule 10b–5 as promulgated under the Securities Exchange Act of 1934; and, various state causes of action. In addition, plaintiffs seek punitive damages and recission of their promissory notes. Defendants Metro Productions, Inc., Trafalgar Acceptance Corp., Michael Roedinger and Jane Roedinger have filed ancillary cross-claims against the Bushkin defendants.

### § 12 Claims Under the 1933 Act

Count I of Plaintiffs' Second Amended Complaint alleges violations of §§ 12(1) and 12(2) of the Securities Act of 1933, ("the 1933 Act"). By an order in this case dated April 22, 1988, this Court dismissed these claims with prejudice. For the reasons stated in the April 22 order, these claims should be, once again, DISMISSED with PREJUDICE.

### Rule 10b–5 Claim

Count I of Plaintiffs' Second Amended Complaint alleges violations of Rule 10b–5 as promulgated by the Securities Exchange Commission under the authority of § 10(b) of the Securities Exchange Act of 1934, ("the 1934 Act"). With respect to this claim, plaintiffs urge the Court to apply the Wyoming four year statute of limitation applicable to state fraud claims. Under the

four year limitation period, plaintiffs' 10b–5 claim is not time barred. Plaintiffs' position is consistent with prior 10th Circuit decisions relating to 10b–5 actions in other districts within the circuit. *See, e.g., Hackbart v. Holmes*, 675 F.2d 1114, 1120 (10th Cir.1982).

The Bushkin defendants reject an application of the Wyoming fraud statute of limitation to this case. Instead, the Bushkin defendants urge the Court to follow the reasoning of a recent Third Circuit decision applying the statute of limitation provisions of the 1934 Act to Rule 10b–5 claims. *See In re Data Access Sys. Sec. Litigation*, 843 F.2d 1537 (3rd Cir.1988). Under the 1934 Act, most cases must be brought within one year of discovery of the fraud, but, under no circumstances, later than three years after the security was offered. *See In re Data Access*, 843 F.2d at 1545–46. If the statute of limitation provisions of the 1934 Act apply to this Rule 10b–5 action, plaintiffs' claim will be time barred under the three year, absolute limitation provision.

■ There is no indication that § 10(b) of the 1934 Act, or Rule 10b–5, were ever intended to create private causes of action. A private cause of action under Rule 10b–5 exists only as a result of judicial implication. *See Superintendent of Ins. v. Bankers Life & Casualty Co.*, 404 U.S. 6, 13 n. 9, 92 S.Ct. 165, 169 n. 9, 30 L.Ed.2d 128 (1971); *In re Data Access*, 843 F.2d at 1547. Because an express, private cause of action is not contained in Rule 10b–5, it is not surprising that no statute of limitation provision was created to limit the time within which private 10b–5 actions may be brought.

To provide a statute of limitation to 10b–5 claims, courts have been forced to borrow limitation periods from state law. Some circuits, including the 10th Circuit, have, at times, applied state fraud statute of limitation provisions to 10b–5 actions. *See, e.g., Hackbart v. Holmes*, 675 F.2d 1114 (10th Cir.1982) (upholding the application of Colorado's three year fraud statute of limitation); *Corwin v. Marney, Orton*

*Inv.*, 788 F.2d 1063 (5th Cir.1986) (applying the Texas two year fraud statute of limitation); *Semegen v. Weidner*, 780 F.2d 727 (9th Cir.1985) (applying the Arizona three year fraud statute of limitation); *IIT v. Cornfeld*, 619 F.2d 909 (2d Cir.1980) (applying New York's two to six year fraud statute of limitation); *IDS Progressive Fund, Inc. v. First of Michigan Corp.*, 533 F.2d 340 (6th Cir.1976) (applying the Michigan six year fraud statute of limitation). At other times, various circuits have used a state's blue sky law statute of limitation. *See, e.g., Jensen v. Snellings*, 841 F.2d 600 (5th Cir.1988) (applying Louisiana's two year blue sky statute of limitation); *White v. Sanders*, 650 F.2d 627 (5th Cir.1981) (applying Alabama's two year blue sky statute of limitation); *Carothers v. Rice*, 633 F.2d 7 (6th Cir.1980) *cert. denied*, 450 U.S. 998, 101 S.Ct. 1702, 68 L.Ed.2d 199 (1981) (applying Kentucky's three year blue sky statute of limitation); *O'Hara v. Kovens*, 625 F.2d 15 (4th Cir.1980), *cert. denied*, 449 U.S. 1124, 101 S.Ct. 939, 67 L.Ed. 2d 109 (1981) (applying Maryland's one year blue sky statute of limitation); *Morris v. Stifel, Nicolaus & Co.*, 600 F.2d 139 (8th Cir.1979) (applying Missouri's two year blue sky statute of limitation). Some of the circuits have applied the statute of limitation applicable to claims under state securities laws. *See, e.g., Teamsters Local 282 Pension Trust Fund v. Angelos*, 815 F.2d 452 (7th Cir.1987) (applying Illinois' three year statute of limitation applicable to claims under state securities laws); *Friedlander v. Troutman, Sanders, Lockerman & Ashmore*, 788 F.2d 1500 (11th Cir.1986) (applying the two year statute of limitation applicable under the Georgia Securities Act); *Cahill v. Ernst & Ernst*, 625 F.2d 151 (7th Cir.1980) (applying the one to three year statute of limitation applicable to claims under Wisconsin's securities laws).

The above citations do not comprise an exhaustive list of federal circuit court decisions in this area. However, the decisions listed above are representative of the wide range of results that follow a district by district analysis of the proper state statute of limitation provision to apply in 10b–5

actions. Depending on where a suit is filed, a plaintiff may have as little as one or as many as six years within which to bring his 10b–5 claim.

There are other areas of federal civil law where there is no express statute of limitations provision. In these instances, the United States Supreme Court has generally applied the "most analogous statute of limitations under state law." *DelCostello v. Teamsters*, 462 U.S. 151, 158, 103 S.Ct. 2281, 2287, 76 L.Ed.2d 476 (1983) (footnote omitted). Examples of these areas include suits under collective bargaining agreements (*see, e.g., DelCostello*, 462 U.S. at 154, 103 S.Ct. at 2285), and civil suits under the Racketeer Influenced and Corrupt Organizations Act ("RICO," 18 U.S.C. § 1964 (1982)), (*see, e.g., Agency Holding Corp. v. Malley–Duff & Assoc., Inc.*, 483 U.S. ——, ——, 107 S.Ct. 2759, 2762, 97 L.Ed.2d 121, 127 (1987)).

With *DelCostello*, the Supreme Court indicated that an automatic application of state statute of limitations provisions to federal civil suits is not appropriate. The Court in *DelCostello* stated that while state statute of limitations provisions should be considered,

> when a [statute of limitation] rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking,

the federal rule should be adopted. *DelCostello*, 464 U.S. at 171–72, 103 S.Ct. at 2294–95. The Court then held that, for suits based on collective bargaining agreements brought in Federal Court, the federal statute of limitation applicable to claims under § 10(b) of the National Labor Relations Act is more appropriate than any of the possible state statute of limitations provisions.

In *Malley–Duff, supra*, the latest pronouncement of the Court on the selection of statutes of limitations for federal civil actions, the Supreme Court announced a two-part test to apply in selecting an appro-

priate limitation provision. First, it is necessary to determine whether "all claims arising out of the federal statute" should be subject to one limitation period, or whether they should be subject to different limitation periods " 'depending upon the varying factual circumstances and legal theories presented in each individual case.' " *Malley–Duff,* 483 U.S. at ——, 107 S.Ct. at 2763, 97 L.Ed.2d at 128 (quoting *Wilson v. Garcia,* 471 U.S. 261, 268, 105 S.Ct. 1938, 1942, 85 L.Ed.2d 254 (1985)). Next, a determination must be made whether a state or federal statute of limitation should apply. *See Malley–Duff,* 483 U.S. at ——, 107 S.Ct. at 2763, 97 L.Ed.2d at 128. This two-part test was applied to a Rule 10b–5 action in the recent Third Circuit case of *In re Data Access Sys. Sec. Litigation,* 843 F.2d 1537 (3d Cir.1988).

■ I will first address the first part of the *Malley–Duff* test, whether or not one limitation period is appropriate for 10b–5 actions. Rule 10b–5 contains prohibitions against fraud, omissions of material fact, and untrue statements of material fact. *See* 17 C.F.R. § 240.10b–5 (1987). Depending on the factual context in which a 10b–5 claim arises, several Wyoming statutes could apply. In this case, plaintiff has urged the Court to use the Wyoming four year statute of limitation applicable to fraud actions. However, the Wyoming Uniform Securities Act might be more applicable. *See* Wyo.Stat. §§ 17–4–101 to 17–4–130 (1987). Under the Wyoming Securities Act private actions must be brought within two years of the contract for sale. *See* Wyo.Stat. § 17–4–122(e) (1987). Presumably, other Wyoming statutes of limitation could apply as well, depending on the facts of a given case.

I am persuaded that leaving the determination of the appropriate statute of limitation in 10b–5 actions to a fact based, claim by claim analysis, would lead to costly and time consuming litigation. A brief review of the reporters will reveal an alarming number of cases addressing the statute of limitations issue in 10b–5 actions. Some of those cases were cited earlier in this section. The same review will reveal an equally alarming diversity of results.

Reacting to similar statute of limitations problems in other federal civil claims cases, the Supreme Court has endorsed the selection of a single statute of limitation for federal civil claims. As the Court has stated: "The federal interests in uniformity, certainty and the minimization of unnecessary litigation all support the conclusion that Congress favored [a single statute of limitation] approach." *Wilson v. Garcia,* 471 U.S. 261, 275, 105 S.Ct. 1938, 1946, 85 L.Ed.2d 254 (1985). I conclude, therefore, that for Rule 10b–5 actions arising in this Court, the federal interests enumerated in *Wilson* require a single statute of limitation to be applicable in all 10b–5 actions.

■ Having determined that a single statute of limitation period is appropriate for 10b–5 actions, I now turn to the second part of the *Malley–Duff* test. Under the second part of the test I must determine whether a federal or state statute of limitation should be used. *See Malley–Duff,* 483 U.S. at ——, 107 S.Ct. at 2763, 97 L.Ed.2d at 128. After reviewing the Wyoming common law action for fraud, other Wyoming causes of action, and the applicable Wyoming limitation periods, I am convinced the statute of limitations provisions of the Securities Exchange Act of 1934 "clearly [provide] a closer analogy than [the] state statutes," and should therefore apply to private causes of action under Rule 10b–5. *DelCostello,* 462 U.S. at 172, 103 S.Ct. at 2294.

The 1933 Act, as amended in 1934, and the 1934 Act, generally, with minor exceptions, require actions to be brought within one year of discovery of the facts constituting the cause of action and within three years after the violation or sale giving rise to the cause of action. *See* 15 U.S.C. §§ 77m, 78i(e), 78r(c), and 78cc(b). *See generally Data Access,* 843 F.2d at 1545–46. The purpose of the absolute three year limitation period has been articulated by the Seventh Circuit: "The legislative history in 1934 makes it pellucid that Congress included statutes of repose because of fear that lingering liabilities would disrupt nor-

mal business and facilitate false claims. It was understood that the three-year rule was to be absolute." *Norris v. Wirtz*, 818 F.2d 1329, 1332 (7th Cir.1987), *cert. denied,* — U.S. ——, 108 S.Ct. 329, 98 L.Ed.2d 356 (1987). *See also Data Access*, 843 F.2d at 1546.

The purpose of the 1933 and 1934 Acts is to, among other things, protect investors. *See Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953); *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). When, in 1934, Congress adopted the one year/three year statute of limitations scheme, I must assume it did so only after balancing the purpose of the Acts with the need to provide for a measure of business certainty. With this in mind, it seems to me that the limitation provisions adopted by Congress for the 1934 Act, the Act from whence 10b–5 actions have evolved, are more analogous, and therefore more appropriate, than any of the possible state limitation periods.

Therefore, I conclude that the applicable statute of limitation period for Rule 10b–5 actions is one year from the date of discovery of the facts constituting the violation and in no event more than three years after such violation.

Turning to the present case, plaintiffs allege that Rule 10b–5 violations occurred in 1977 and 1978 [Plaintiffs' Second Amended Complaint ¶ 68E]. Applying the three-year provision of the statute of limitation, I find that the plaintiffs' 10b–5 claim is barred. Therefore, plaintiffs' Rule 10b–5 claim should be DISMISSED with PREJUDICE.

### § 17(a) Claim

In Count II of Plaintiffs' Second Amended Complaint, plaintiffs seek relief for defendants' alleged violation of § 17(a) of the Securities Act of 1933. Whether a private cause of action exists under § 17(a) is not at all certain. The Tenth Circuit has, without ruling on the issue, questioned whether there is a private cause of action under § 17(a). *See Ohio v. Peterson, Lowry, Rall, Barber & Ross*, 651 F.2d 687, 689 n. 1 (10th Cir.1981) *cert. denied* 454 U.S. 895, 102 S.Ct. 392, 70 L.Ed.2d 209 (1981).

Among the districts of the 10th Circuit there is a conflict as to whether a private cause of action may be maintained under § 17(a). *See Creech v. Federal Land Bank*, 647 F.Supp. 1097 (D.Colo.1986) (no private cause of action under § 17(a)); *In re Storage Technology Corp. Sec. Litigation*, 630 F.Supp. 1072 (D.Colo.1986) (same); *Leiter v. Kuntz*, 655 F.Supp. 725 (D.Utah 1987) (same); *Woods v. Homes & Structures of Pittsburg, Kansas, Inc.*, 489 F.Supp. 1270 (D.Kan.1980) (same); *but see, Westland Energy 1981–1 Ltd. v. Bank of Commerce & Trust Co.*, 603 F.Supp. 698 (D.Okla.1984) (holding that a private cause of action does exist under § 17(a)).

It is not necessary for me to reach the issue of whether a private cause of action exists under § 17(a). A comparison of § 17(a) and Rule 10b–5 reveals that the two provisions are nearly identical. *Cf.*, 15 U.S.C.A. § 77q(a) (1981) *and* 17 C.F.R. § 240.10b–5 (1987). Given the similarities between the two provisions, I conclude that, for the reasons stated in the preceding section, the statute of limitation for a section § 17(a) action, if such an action does indeed exist, would be one year from discovery but no more than three years from violation, just as with 10b–5 actions.

In the present case, plaintiffs have alleged § 17(a) violations in 1977 and 1978. [Plaintiffs' Second Amended Complaint ¶ 68B]. Under the one year/three year statute of limitations period, the plaintiffs' § 17(a) claim is time barred. Therefore, plaintiffs' § 17(a) claim should be DISMISSED.

### RICO Claim

RICO claims are subject to a four year statute of limitation. *See Agency Holding Corp. v. Malley-Duff Assoc.*, 483 U.S. ——, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987). Under federal law, a cause of action accrues and the statute of limitation period begins to run when the plaintiff knows or has reason to know of the injury which is the basis for his action. *See Compton v. Ide*, 732 F.2d 1429 (9th Cir. 1984).

Plaintiffs allege they were sold the videotapes no later than 1978. [Plaintiffs' Second Amended Complaint ¶ 36]. Plaintiffs also allege that they were promised "immediate and positive cash flow," [*id.* at ¶ 46], and that they would enjoy "income and profits which would offset their liability for payment of the Promissory Notes executed by them in favor of the Defendants." [*Id.* at ¶ 7]. Plaintiffs also allege that they "never received any income from their investments." [*Id.* at ¶ 8]. The allegations of an immediate expectation of profit, and a complete lack of any income from the investment, are inconsistent with plaintiffs' position that the fraudulent scheme from which they allegedly suffered was not discovered and could not have been discovered until sometime within the four year limitation period. Since plaintiffs had an expectation of immediate profits, the fact they received no immediate profits should have put them on nearly immediate notice that something was amiss.

To the extent plaintiffs are taking the position they had notice only after the Tax Court's adverse ruling in *Porreca,* their position is not well founded. Plaintiffs should have been on notice that they had potential claims long before the Tax Court's ruling. Plaintiffs should have been on notice when their expectations of immediate, positive cash flow went unfulfilled. It is knowledge of compensible loss which triggers the running of the limitation period, not the loss of tax benefits. *See Volk v. D.A. Davidson & Co.,* 816 F.2d 1406, 1414 (9th Cir.1987) ("Whatever action the IRS ultimately takes does not affect defrauded investors' rights to damages.").

I conclude therefore, plaintiffs knew or should have known of their potential RICO or fraud claim in the time period between 1978, the date of the last sale, and 1982. Their RICO claim is therefore time barred and should be DISMISSED with PREJUDICE.

### Pendent Jurisdiction

The balance of plaintiffs' claims are pendent to the federal claims discussed above. Having dismissed the federal claims, I must now decide whether to retain jurisdiction over the state claims.

"Pendent jurisdiction is a doctrine of discretion which is not to be routinely exercised." *Central Nat. Bank v. Rainbolt,* 720 F.2d 1183 (10th Cir.1983). In deciding whether to retain jurisdiction over the pendent claims, I find guidance from the Supreme Court which has stated:

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

*United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). In light of the clear direction of the Tenth Circuit and the Supreme Court, I must DISMISS the pendent state claims.

### Ancillary Jurisdiction

Defendants Metro Productions, Inc., Trafalgar Acceptance Corp., Michael Roedinger and Jane Roedinger have filed ancillary, state cross-claims against the Bushkin defendants. The bases for the ancillary cross-claims were the federal claims dismissed above. Because the underlying federal claims have been dismissed, the ancillary claims should be DISMISSED as well. *See Joiner v. Diamond M. Drilling Co.,* 677 F.2d 1035 (5th Cir.1982). *See also United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *McDonald v. Oliver,* 642 F.2d 169 (5th Cir. 1981).

Therefore, it is

ORDERED that the Bushkin defendants' motion to dismiss plaintiffs' claims based on §§ 12(1) and 12(2) of the 1933 Act is GRANTED and such claims are hereby DISMISSED with PREJUDICE. It is further

ORDERED that the Bushkin defendants' motion to dismiss plaintiffs' Rule 10b–5 claims is GRANTED and such claims are

hereby DISMISSED with PREJUDICE. It is further

ORDERED that the Bushkin defendants' motion to dismiss plaintiffs' claims based on § 17(a) of the 1933 Act is GRANTED and such claims are DISMISSED with PREJUDICE. It is further

ORDERED that the Bushkin defendants' motion to dismiss plaintiffs' RICO claims is GRANTED and such claims are hereby DISMISSED with PREJUDICE. All federal claims having been dismissed, it is further

ORDERED that plaintiffs' pendent state claims be DISMISSED. It is further

ORDERED that the Bushkin defendants' motion to dismiss the ancillary cross-claims against them is GRANTED and such claims are hereby DISMISSED. All claims and cross-claims having been dismissed, it is further

ORDERED that all other motions with regard to this matter are moot, and are therefore DENIED.