COOPERATIVA AHORRO y CREDITO AGUADA, Plaintiff,

v.

KIDDER, PEABODY & CO., Paine Webber, Incorporated, Ramon M. Almonte, Jane Doe, and the Property Partnership existing between them, Defendants.

Civ. No. 89–1706 (JAF).

United States District Court, D. Puerto Rico.

Oct. 31, 1991.

---

**154**

Roberto Boneta, Munoz Boneta Gonzalez Arbona Benitez & Peral, San Juan, P.R., for plaintiff.

Harry E. Woods, Woods & Woods, San Juan, P.R., for Almonte.

Richard Graffam, McConnell Valdes Kelley Sifre Griggs & Ruiz–Suria, San Juan, P.R., for Kidder.

Carlos Bobonis González, Bobonis Bobonis & Rodriguez Poventud, San Juan, P.R., for Paine Webber.

## OPINION AND ORDER

FUSTE, District Judge.

The plaintiff, Cooperativa Ahorro y Crédito Aguada ("Coop"), is a single-branch savings and loan institution, which brought claims under the Federal Securities Acts, local law fraud statutes, and the Racketeer Influenced and Corrupt Organization Act (RICO) against its account representative, Almonte, and his employers Kidder, Peabody & Co. ("Kidder") and Paine Webber Incorporated ("Paine Webber") during the period he handled Coop's account. In an earlier opinion, *Cooperativa de Ahorro y Crédito Aguada v. Kidder, Peabody & Co.*, 758 F.Supp. 64, 75 (D.P.R.1991), this court dismissed some of plaintiff's claims and stayed the disposition of the remaining claims pending decision by the Supreme Court in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* — U.S. —, 111

S.Ct. 2773, 115 L.Ed.2d 321 (1991). The facts were extensively discussed in an earlier opinion; however, we will reiterate the essentials here.

Plaintiff Coop claims that defendant Almonte, while working for Kidder, fraudulently induced the Coop to invest more than three and a half million dollars in Drexel Burnham "junk bond funds." Plaintiff bought Drexel Burnham Lambert Unit Trust Series 10 and 2 ("Drexel assets") through Almonte over a period of seven months, from June 1986 to December 16, 1986. When Almonte moved from Kidder to Paine Webber in June 1987, he took the Coop account with him. On December 3, 1988, the plaintiff, responding to general rumors that Drexel "junk bond" investments were increasingly unstable, requested information about the value of its Drexel assets. Coop claims Almonte sent it a letter in which he intentionally misstated the value of those assets. Coop further claims that all account statements sent to plaintiff thereafter omitted the value of the Drexel assets or falsely stated that the value was not available to Paine Webber. The claim is that these misrepresentations induced Coop to hold the Drexel assets until the trusts were liquidated by the trustee, in July 1989, having fallen below 50% of their original principal value.

In the previous opinion, this court dismissed all claims brought against Paine Webber alleging securities violations for failure to state a claim upon which relief could be granted. All RICO claims brought against Paine Webber and Kidder were also dismissed for failure to state a claim, as was the 18 U.S.C. § 1962(b) RICO claim against Almonte. The remaining 18 U.S.C. § 1962(c) RICO claim against Almonte, along with the securities claims against Almonte and Kidder, and the pendent local law fraud claims against the three defendants were stayed pending resolution of *Lampf.*[1]

---

1. In *Lampf, Pleva, Kipkind, Prupis & Petigrow v. Gilbertson,* — U.S. —, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991), the Supreme Court decided the question of which statute of limitations,

state or federal, should be applied in a section 10(b) suit. Following the resolution of *Lampf,* Kidder requested the court to lift the earlier stay and entertain the pending motions.

## I. *The Implications of Lampf*

In *Lampf,* the Supreme Court found that the federal statute of limitations applicable to the express causes of action in section 13 of the Securities Act of 1933, 15 U.S.C. § 77m, and to certain of the express actions in the 1934 Act, 15 U.S.C. §§ 78i(e), 78r(c), and 78cc(b), should also be applied to causes of action under section 10(b) of the 1934 Securities Act, 15 U.S.C. § 78j(b). By adopting this particular statute of limitations, the Supreme Court resolved the unstable situation created by its earlier decisions in *Del Costello v. International Brotherhood of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), and *Agency Holding Corp. v. Malley–Duff & Associates, Inc.,* 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987), which had suggested that the adoption of an analogous state statute of limitations might no longer be appropriate where there existed a suitable federal limitations period. The instability resulted from the lower court response, for while some lower courts began to apply the federal standard, others continued to borrow the state standard.[2] The new federal statute of limitations for section 10(b) actions, which derives from other provisions of the 1934 Act, was adopted in *Lampf* because it was "designed to accommodate a balance of interests very similar to that at stake in this litigation." *Lampf,* 111 S.Ct. at 2775. The "one and three year" structure allows the plaintiff one year from discovery of the deception and three years from the actual commission of the fraud to file. While the absolute bar of three years might seem strict, it was adopted by the Court because it more clearly reflects the remedial purposes of the statute.

An application of the *Lampf* standard to the instant case would bar the plaintiff's claims under section 10(b). With the federal limitations period, the predicate acts necessary to prove a claim under section 10(b) must have been committed within the three-year period preceding the date of filing. According to the *Birnbaum* rule, a "predicate act" is limited to the actual purchase or sale of a security, *Birnbaum v. Newport Steel Corp.,* 193 F.2d 461 (2nd Cir.), *cert. denied,* 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952) (adopted by the Supreme Court in *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975)). Therefore, the relevant predicate acts in this case for all claims under the Securities Acts are the purchases of Drexel Burnham Lambert Unit Trust Series 10 and 2 ("Drexel assets") by Coop through Almonte. These purchases all took place before December 28, 1986, or more than three years before the filing of the action on December 28, 1989.

Plaintiff, however, argues that the federal statute of limitations period should not be applied in the instant case. An application of the federal statute of limitations to the instant case would entail retroactive application of a new rule, violating the standards established in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971).[3] Under *Chevron Oil,* when a new statute of limitations period is established by the Supreme Court, it should be applied prospectively if "it overrules clearly established Circuit precedent on which the complaining party was entitled to rely, ... retroactive application would be inconsistent with the purpose of the underlying substantive statute, and ... such application would be manifestly inequitable," *St. Francis College v. Al–Khazraji,* 481 U.S. 604, 608–09, 107 S.Ct. 2022, 2025–26, 95 L.Ed.2d 582 (1987).

However, *Chevron Oil* was never even mentioned by the majority in *Lampf.*

---

2. Three circuits had adopted the federal limitations period after *Agency Holding. Ceres Partners v. GEL Assoc,* 918 F.2d 349 (2nd Cir.1990), *In re Data Access Systems Secur. Litigation,* 843 F.2d 1537 (3rd Cir.1988), and *Short v. Belleville Shoe Mfg. Co.,* 908 F.2d 1385 (7th Cir.1990).

3. See Justice O'Connor's discussion of the Court's failure to apply *Chevron Oil. Lampf,* 111 S.Ct. at 2785 (J. O'Connor, dissenting): "In holding that respondent's suit is time-barred under a limitations period that did not exist before today, the Court departs drastically from our established practice and inflicts an injustice on the respondents."

Their cursory treatment of a seemingly important precedent can only be explained by the decision in *James B. Beam Distilling Company v. Georgia*, — U.S. —, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991), a case decided on the same day as *Lampf.* There, the Supreme Court ruled that "selective prospectivity" was contrary to the "principles of equality and *stare decisis.*" The Court stated that decisions may be either retroactively or prospectively applied, but the application must be uniform.[4] *Beam* prevents lower courts from using *Chevron Oil* as they have in the past, by applying the equitable principles of *Chevron Oil* to decide whether a new statute of limitations handed down from the Supreme Court should work retroactively.[5] Now, after *Beam*, lower courts must apply the statute of limitations adopted by the Supreme Court to all pending cases, unless the Court mandates a prospective application.

This court stayed its decision in anticipation of the result of *Lampf* and now that the result is clear, it must be applied. In so doing, we follow *Beam* and apply the new federal statute of limitations for section 10(b) actions retroactively as it was applied by the Court in *Lampf.* In sum, we find plaintiff's claims against defendants Kidder and Almonte under section 10(b) of the 1934 Securities Act, Rule 10b–5, 15 U.S.C. § 78j(b), for fraud in the sale of securities to be time-barred.

■ Although the court's decision in *Lampf* only explicitly referred to section 10(b) actions, we believe the same statute of limitations period should be applied to section 17(a) of the 1933 Act, 15 U.S.C. § 77q(a), for fraud in the sale of securities. Not only is the language of section 10(b) modeled directly on section 17(a), but the treatment for statute of limitations purposes has always been the same. *Verrecchia v. Paine, Webber, Jackson & Curtis*, 563 F.Supp. 360, 367 (D.D.C.1982); *Bath v. Bushkin, Gaims, Gaines and Jonas*, 695 F.Supp. 1156, 1162 (D.Wyo.1988). If this court were to apply a different statute of limitations period to section 17(a), such application would become a means of circumventing the federal limitations period applied to section 10(b) actions, since the two actions are substantively similar. Furthermore, the Supreme Court has ruled that, "[w]hen the statute of origin contains comparable express remedial provisions, the inquiry usually should be at an end. Only where no analogous counterpart is available should a court then proceed to apply state-borrowing principles." *Lampf*, 111 S.Ct. at 2780. For these reasons, we now apply the "one and three year" period to plaintiff's claim under section 17(a) and find such cause of action to be time-barred.

■ The same reasoning should be applied to claims under sections 15(c)(1) and (2) of the 1934 Act, 15 U.S.C. § 78*o*(c)(1) & (2), for the use of manipulative or deceptive devices by a broker. Although the question of whether this provision even provides a private right of action is still open

---

**4.** In *Robinson v. Caulkins Indiantown Citrus Co.*, 771 F.Supp. 1205 (S.D.Fla.1991), the court found that although *Beam* disallowed "selective prospectivity", it had not ruled on "selective retroactivity". Citing J. Stevens, it distinguished between selective retroactive application based upon a general acceptance of the validity of an old rule and that which was specific to the equities of a particular case. The first it found to be invalid according to the philosophy that judges are "discerning what the law *is.*" *Beam*, — U.S. at —, 111 S.Ct. at 2451 (J. Scalia, concurring). It found that a court could apply "selective retroactivity" for "independent case-specific equitable reasons." The First Circuit, however, has specifically rejected a case-by-case application of *Chevron Oil*. *Simpson v. Director, Office of Workers' Compensation Pro-*

grams, etc., 681 F.2d 81, 84–85 (1st Cir.1982). We find that *Beam* must be read to exclude all *selective* application.

**5.** *Chevron Oil* itself did not change the general rule of that Supreme Court decisions work retroactively, but it did establish an exception for situations where the courts had traditionally exercised equitable discretion, like the application of a statute of limitations. *American Trucking Assn's. v. Smith*, — U.S. —, 110 S.Ct. 2323, 2355, 110 L.Ed.2d 148 (1990) (J. Stevens, dissenting). The exception had almost unanimous support within the Court. If it may no longer be applied as it was in *Del Costello*, see *Graves v. Smith's Transfer Corp.*, 736 F.2d 819 (1st Cir.1984), then the efficacy of *Chevron Oil* has been severely limited.

in our circuit,[6] we bypass that issue and find that the consistent application of the "one and three year" statute of limitations period from section 29(b) of the 1934 Act, 15 U.S.C. § 78cc(b), to section 15(c) actions under some circumstances provides "comparable express remedial provisions" which should be applied to all types of section 15(c) actions.[7] We find that claims under section 15(c)(1) & (2) are governed by a "one and three year" statute of limitations and are time-barred. Since we are dismissing the section 10(b) action, the section 17(a) action and the section 15(c)(1) & (2) action against Almonte, the claims under section 20 of the 1934 Act, 15 U.S.C. § 78t, must also be dismissed, since for this section to apply, the person controlled (in this case, Almonte) must be liable under some other provision of the federal securities laws.[8]

## II. *RICO claim*

The plaintiff has one surviving RICO claim against defendant Almonte and claims of local law fraud against all the defendants. Before we can address the issue of whether this court has jurisdiction over the pendent local law fraud claims, we must examine the legitimacy of the surviving federal claim. We, therefore, turn to defendant Almonte's motion to dismiss the RICO claim against him.

This court ordered the plaintiff to amend its complaint to conform it to Fed.R.Civ.P. 9(b) by clearly stating the acts it alleges

constituted the fraud. Under Fed.R.Civ.P. 12(b)(6), a court should grant a motion to dismiss for failure to state a claim when "it appears to a certainty that the plaintiff would be unable to recover under any set of facts." *González–Bernal v. U.S.*, 907 F.2d 246, 248 (1st Cir.1990). The court must "accept as true all material allegations of the [second] amended complaint, and construe them in favor of the complaining party." *International Paper Company v. Jay*, 928 F.2d 480, 482 (1st Cir.1991) (citation omitted). Plaintiff asserts that Almonte purposefully misrepresented and failed to disclose information with the end of misleading the plaintiff about the value of its investment.

Under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968, in order to recover, a plaintiff must prove that the defendant engaged in "prohibited activities" constituting predicate acts which constitute a "pattern of racketeering activities." Racketeering activity includes mail fraud (18 U.S.C. § 1341) and wire fraud (18 U.S.C. § 1343) as possible predicate acts. 18 U.S.C. § 1961(1). A "pattern" requires a threshold of "at least two acts of racketeering activity" within a ten-year period. 18 U.S.C. § 1961(5). The Supreme Court recently addressed the pattern of racketeering requirement in *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). Because the definition of a "pattern" only stated the minimum neces-

**6.** See *Landry v. Hemphill, Noyes & Co.*, 473 F.2d 365 (1st Cir.), *cert. denied,* 414 U.S. 1002, 94 S.Ct. 356, 38 L.Ed.2d 237 (1973); *Gilman v. Shearson/American Express, Inc.*, 577 F.Supp. 492 (D.N.H.1983), which rule a private right of action exists. *Contra, Prestera v. Shearson Lehman Bros.*, Fed.Sec.L.Rep. (CCH) p. 92, 884, 1986 WL 10095 (D.Mass.1986); *Roberts v. Smith Barney, Harris Upham & Co.*, 653 F.Supp. 406 (D.Mass.1986).

**7.** In 1938, Congress passed an amendment to section 29(b) imposing a "one and three year" statute of limitations on actions brought for violations of Commission rules under section 15(c)(1). One commentator argues that because section 29(b) refers only to declaring contracts "void" arguably only private suits for rescission for violation of section 15(c)(1) would be subject to its statute of limitations, while suits for

damages would be subject to a state statute of limitations like section 10(b) actions. Scott, *A Broker–Dealer's Civil Liability to Investors for Fraud: An Implied Private Right of Action Under Section 15(c)(1) of the Securities Exchange Act of 1934,* 63 Ind.L.J. 687 (1987). Given that section 10(b) now has a federal statute of limitations and that some section 15(c) actions were governed by the same type of statute of limitations in section 29(b), we feel confident in applying this statute of limitations to section 15(c)(1) & (2).

**8.** 15 U.S.C. § 78t(a) states in part: "Every person who, directly or indirectly, controls any person *liable under any provision of this chapter* or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person." (Emphasis added).

sary criteria, *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985), the Court found it necessary to elaborate on the definition of "pattern". The Court held that the RICO plaintiff must show "continuity *and* relationship" to prove a pattern. The plaintiff "must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J. Inc.*, 492 U.S. at 239, 109 S.Ct. at 2900.

The first step toward establishing whether a pattern exists is to identify the predicate acts. The remaining claim under section 1962(c) is against Almonte while he was at Paine Webber, Paine Webber being the enterprise. Although the alleged scheme perpetrated by Almonte began while he was employed by Kidder and continued while he was employed by Paine Webber, for the purposes of the RICO statute we must treat these two periods as comprising two separate schemes. Only if Kidder and Paine Webber may be treated as an association-in-fact can all of Almonte's acts be considered together. As this court found in its earlier opinion, *Cooperativa de Ahorro*, 758 F.Supp. at 75, an association-in-fact "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit," *United States v. Turkette*, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981),—not a situation inherent in simply sequentially employing the same individual. Continuity being the most important aspect of an association-in-fact, *Ocean Energy II, Inc. v. Alexander & Alexander, Inc.*, 868 F.2d 740 (5th Cir.1989), Kidder and Paine Webber cannot be treated as an association-in-fact enterprise. Since in our earlier opinion we found there was no pattern of racketeering activity during the period Almonte was employed at Kidder, in this opinion we will only consider Almonte's actions while at Paine Webber to determine whether a pattern was created by Almonte's predicate acts.

In its second amended complaint plaintiff alleges that defendant Almonte sent a letter on January 18, 1989 in response to a December 3, 1988 letter from plaintiff requesting monthly information concerning the market value of the securities held in its account which misstated the value of the Coop's holdings of Drexel assets. Plaintiff also alleges that in the monthly account statements supplied to plaintiff subsequent to this letter from January to June, the value of the Drexel assets which was available to Paine Webber was omitted or stated to be "not available" in order to prevent plaintiff from discovering the decline in the value of these assets. Plaintiff alleges that since defendant Almonte received copies of the statements, he knew that these statements omitted information specifically requested by plaintiff. Plaintiff also alleges that during this period it had multiple telephone conversations with Almonte in which he failed to mention the declining value of the Drexel assets. The trust was liquidated by the trustee in July 1989.

## A. Mail Fraud and Wire Fraud

Violation of the mail fraud statute, 18 U.S.C. § 1341, or the wire fraud statute, 18 U.S.C. § 1343, can constitute a predicate act for RICO purposes. To establish that the defendant violated these statutes, plaintiff must show that defendant was engaged in or aided and abetted a scheme to defraud with the specific intent to defraud and that the United States mail was used in furtherance of the scheme. *See, e.g., McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.*, 904 F.2d 786 (1st Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 536, 112 L.Ed.2d 546 (1990). The scheme alleged here entails the misrepresentation of facts to an investor concerning the value of its investments in order to retain its account by fraudulent means. The allegations of wire fraud—that Almonte failed to mention the value of the Drexel assets in phone conversations with plaintiff—fail on the requirement that the wire communications be interstate. *See Smith v. Ayres*, 845 F.2d 1360 (5th Cir.1988). As far as this court has been able to ascertain, all telephone calls between Almonte and the Coop representatives were made within Puerto Rico. The January 18, 1989 letter, with its mis-

representations, clearly could be a predicate act. Construing the evidence in plaintiff's favor, we must conclude that Almonte's letter purposefully misstated the value of plaintiff's Drexel assets.[9] Almonte was obviously trying to misrepresent the declining value of the Drexel assets to the Coop with the intent that they believe the value of the assets to be higher than they actually were. And the letter was sent by U.S. Mail.

Notwithstanding the above, Paine Webber's account statements do not contain a misrepresentation. The monthly account statements were sent to the plaintiff by Paine Webber, which, as the enterprise, cannot be liable under section 1962(c). These could be predicate acts for a claim against Almonte only if they represent part of a scheme by Paine Webber which he aided and abetted. *Petro–Tech, Inc. v. Western Co. of North America*, 824 F.2d 1349 (3rd. Cir.1987). The information on these monthly account statements must be shown to be a misrepresentation constituting part of a scheme to defraud by Paine Webber. We find that the information on the statements cannot be found to be a misrepresentation. The statements were obviously generated by a computer in the normal course of business. The value of the Drexel assets had not been included in any of the previous statements, these simply included the dividends and return on price received by the plaintiff's account. The January and February statements retained this form. The first "not available" only appeared in the March statement. The phrase "not available" also appears in the statements for holdings other than the Drexel holdings. There was a disclaimer at the bottom of the statement which said that "Bond prices are approximate. Contact your investment executive for current market prices." Plaintiff presents no evidence to suggest that these statements were not simply generated in the normal course of business. It also does not show that its account was singled out for irregular treatment. To hold that the phrase "not available" on such a document amounts to active misrepresentation would be inappropriate.

The absence of information about plaintiff's Drexel assets in the account statements could, however, constitute an omission. "The concealment by a fiduciary of material information which he is under a duty to disclose to another under circumstances where the nondisclosure could or does result in harm to another is a violation of the [mail fraud] statute." *United States v. Carpenter*, 791 F.2d 1024 (2nd Cir.1986), *aff'd.* 484 U.S. 19, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987) (quoting *United States v. Newman*, 664 F.2d 12 (1981)); *see also, United States v. Silvano*, 812 F.2d 754 (1st Cir.1987). If Paine Webber had a duty to disclose, then the omission of information could be a violation of the mail fraud statute. But there is no evidence Paine Webber had such a duty to disclose. "Normally the agency relationship created by a nondiscretionary account arises when the client places an order and terminates when the transaction ordered is complete.... The stockbroker assumes no continuing obligation to advise his clients of information that affects their securities." *Caravan Mobile Home Sales, Inc. v. Lehman Bros. Kuhn Loeb, Inc.*, 769 F.2d 561 (9th Cir.1985) (citations omitted). This account was not, as plaintiff alleges, one where Almonte or his employers exercised "investment discretion" as defined in 15 U.S.C. § 78c(a)(35). The client made all investment decisions with advice from the broker. The broker had no continuing obligation to volunteer information to his client and his employer certainly had no such obligation. The statement itself establishes an independent responsibility on the part of the investor to contact its account executive if it has any questions. The fact that a price was "not available" should have prompted Coop to question Almonte, with whom they allege they were in frequent

---

9. Exhibit E of Plaintiff's Joint Opposition to Motions to Dismiss and Memorandum of Law in Support Thereof shows a December 11, 1989 telex giving the values of BID 504.35 for Series 2 and BID 787.37 for Series 10. These were reported in Almonte's letter in Exhibit F as BIC Price 604.35 for Series 2 and BIC Price 887.37 for Series 10.

contact. Plaintiff never mentions any other requests for information aside from the December 3, 1988 letter, to which they received an answer, albeit inaccurate. The plaintiff cannot create a duty where one does not exist. Whatever the fiduciary duty of Paine Webber and/or Almonte toward the plaintiff, it did not extend to the routine production of statements. Therefore, these statements do not provide evidence of violations of the mail fraud statute nor are they predicate acts for RICO purposes. The only predicate act then, is the misrepresentation made in the letter of January 18, 1989.

## B. The RICO Pattern

■ The First Circuit has abandoned the multi-factor approach and now follows *H.J. Inc. Fleet Credit Corp. v. Sion*, 893 F.2d 441, 445 (1st Cir.1990). *Fleet* found that "[a] plaintiff establishes that predicate acts are related by demonstrating that they 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'" *Fleet Credit Corp.*, 893 F.2d at 445 (citation omitted). In this case, all the acts have the same victim and are, therefore, related. Of the two elements, it is the element of continuity which is the more difficult to interpret. Under *H.J., Inc.*, there are only two considerations in establishing continuity: the duration of the activity and the criminal nature of the activity. In this case, however, the plaintiffs have not even reached the threshold level of proving "at least two acts of racketeering activity" within a ten-year period, so we do not need to address the question of continuity. Since the plaintiff has not successfully alleged an action under section 1962(c), we dismiss its claim.

**10.** P.L. 101–650 § 310(c).

**11.** Wright & Miller, *Jurisdiction & Related Matters* 2d § 3567.3 at 28 (Supp.1991). "The specific holding of Finley must surely be applied in cases that were already pending prior to December 1, 1990, but it would make no sense to give

## III. *Pendent Party Jurisdiction*

■ The plaintiff seeks to bring state law claims against Kidder, Paine Webber and Almonte on the strength of the surviving federal claim against Almonte. Where a party seeks to bring a pendent state law claim against defendants over whom the federal court has no original jurisdiction, courts have traditionally proceeded cautiously. Pendent party jurisdiction is a doctrine largely developed by the lower courts. The Supreme Court recently discussed pendent party jurisdiction in the context of the Federal Tort Claims Act in *Finley v. United States*, 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989). *Finley* has been read by the courts in two ways: narrowly, as specifically addressing the appropriateness of pendent party jurisdiction within the context of the Federal Tort Claims Act, and broadly, as forbidding pendent party jurisdiction except where Congress affirmatively grants such jurisdiction. Congress reacted to *Finley* in the Judicial Improvements Act of 1990, Pub.L. No. 101–650 § 310, 104 Stat. 5089 (Dec. 1, 1990), which created a new category of "supplemental jurisdiction" to replace the categories of pendent and ancillary jurisdiction. The new law specifically allows pendent party jurisdiction, subject to the considerations articulated in *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).[10] Although this law is only applicable to cases filed after December 1, 1990, certainly an application of the broad interpretation of *Finley* to the small segment of cases filed between the decision in *Finley* on May 22, 1989 and the passage of P.L. 101–650 § 310 on Dec. 1, 1990, would produce results significantly different from the results once the law goes into effect. To avoid this discrepancy, adopting the narrow interpretation of *Finley*, as applicable only to the FTCA, seems most appropriate.[11] This leaves us with a traditional pendent party analysis using the factors established by case law.[12] In the

an expansive reading to Finley to reach a result that Congress has deliberately repudiated for future cases."

**12.** Plaintiff must overcome two threshold issues: 1) whether there is a common nucleus of operative fact, *United Mine Workers v. Gibbs*, 383 U.S.

instant case, however, since we are dismissing the only existent federal claim, we need not conduct such an analysis. It is an established rule that if all federal claims are dismissed, the court has the discretion to dismiss all pendent state claims. *Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139. We exercise that discretion and dismiss plaintiff's pendent state claims.

### IV. *Conclusion*

1. This court now DISMISSES all federal securities law claims. Claims under section 10(b) of the 1934 Securities Act, Rule 10b–5, 15 U.S.C. § 78j(b), are time-barred according to *Lampf,* as are claims under section 17(a) of the 1933 Act, 15 U.S.C. § 77q(a). Claims under section 15(c)(1)–(2) of the 1934 Act, 15 U.S.C. § 78o(c)(1), (2), are also time-barred under section 29(b) of the 1934 Act, 15 U.S.C. § 78cc(b). Claims under section 20 of the 1934 Act, 15 U.S.C. § 78t, are dismissed for failure to state a cause of action.

2. This court also DISMISSES the remaining section 1962(c) claim against defendant Almonte for failing to state a cause of action.

3. This court declines to exercise pendent jurisdiction and DISMISSES without prejudice all local law fraud claims.

Judgment will be entered accordingly dismissing the complaint as to all defendants.

IT IS SO ORDERED.

at 725, 86 S.Ct. at 1138; *see also, Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1989); and 2) that Congress has not expressly or by implication negated pendent party jurisdiction for the federal claims at issue. *Aldinger v. Howard,* 427 U.S. 1, 17, 96 S.Ct. 2413, 2421, 49 L.Ed.2d 276 (1976).