Richard E. JAMES, Plaintiff,

v.

Eugene McCOY, Sr., Defendant.

No. C2–95–668.

United States District Court, S.D. Ohio, Eastern Division.

March 30, 1998.

---

13. Assuming these records exist, defendants are well advised to produce them at trial.

Clyde C. Kahrl, Mt. Vernon, OH, for Plaintiff.

Tunney Lee King, Columbus, OH, for Defendants.

## ORDER

ABEL, United States Magistrate Judge.

Plaintiff Richard E. James brings this action against Defendants Timothy McCoy, Teresa McCoy, Eugene McCoy, Sr., Sylvia McCoy, and Appliance Center of Mount Vernon, Inc. The action arises from Plaintiff's December 1982 sale of an appliance business known as the Appliance Repair Center to Defendant Timothy McCoy. Plaintiff alleges violations of the Securities Act of 1933, 15 U.S.C. § 77q; the Ohio Securities Act, Ohio Revised Code Chapter 1707; the Securities Exchange Act of 1934, 15 U.S.C. §§ 78(j) and 78(t); the Ohio Fraudulent Conveyance Act, Ohio Revised Code Chapter 1336; the Ohio Voluntary Assignment Act, Ohio Revised Code Chapter 1313; the Ohio General Corporation Law, Ohio Revised Code Chapter 1701; the Racketeering, Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. §§ 1961–1968; and Ohio Revised Code § 2923.32. The parties have consented to final judgment by Magistrate Judge. This action is now before the Court on Defendants' motion for summary judgment and Plaintiff's motion for partial summary judgment.

## FACTS

Plaintiff Richard James has spent his entire business career in the repair of household appliances. He formed Appliance Repair Center ("ARC") in 1966 and operated it as a sole proprietorship. ARC did not sell appliances. Defendant Timothy McCoy worked for ARC during high school and again beginning about December 1981. See James v. McCoy, 114 B.R. 489, 490–91 (Bankr.S.D.Ohio 1990).

In December 1981, Timothy McCoy told Mr. James that he and his father, Eugene McCoy intended to form an appliance sales business. Mr. James and Timothy McCoy began preliminary discussions about Mr. James selling ARC to Timothy and Eugene McCoy. See 114 B.R. at 491. In June 1982, Timothy McCoy, along with Eugene McCoy, Sr., Sylvia McCoy and Teresa McCoy, formed the corporation Appliance Center of Mount Vernon, Inc. ("ACMV") for the purpose of retail sales of appliances. See id. Mr. James alleges that Defendants formed this corporation for the purpose of defrauding him.

On November 2, 1982, Mr. James and Timothy McCoy executed a sales agreement for the sale of ARC to Timothy McCoy for $130,000 with the sale to close no earlier than January 1, 1985 and no later than January 1, 1988. See 114 B.R. at 491. ACMV began offering appliances for sale in December 1982. See id. Mr. James knew that ACMV was owned by Timothy, Teresa, Eugene, and Sylvia

McCoy. *See id.* ACMV and ARC operated out of the same building. Timothy McCoy was co-manager of ARC, but he was also operating ACMV. Considerable friction arose between Mr. James and Timothy McCoy. *See id.*

On April 25, 1984, Mr. James and Timothy McCoy renegotiated the sales agreement. (Pl.'s Ans. to Defs.' Interrog., Defs.' Ex. A at 6). The Modified Sales Agreement provided that the purchase price would be $134,500. (Compl.¶ 13.10). Also on April 25, 1984, Timothy McCoy executed a promissory note in the amount of $116,500 in favor of Mr. James. (Compl.¶ 13.13). The promissory note required an initial payment of $25,000 on May 25, 1984, and subsequent installments to be paid once per year for the next five years. (Compl.¶ 13.13). Timothy McCoy made the first payment on May 25, 1984, but made no further payments. (Compl.¶ 13.15).

Mr. James was influenced in his decision to sell ARC to Timothy McCoy by his belief that he retained an ownership interest in ACMV and his belief that ACMV was profitable. *See* 114 B.R. at 494. (In fact, Timothy McCoy apparently made a sham transfer of his 25% interest in ACMV to his wife Teresa in December 1983. *See* 114 B.R. at 493). However, the sale of ARC was to Timothy McCoy as an individual, and Mr. James required no guarantees from ACMV or its share holders. *See* 114 B.R. at 494. He retained no security interest in the assets transferred to Timothy McCoy. There was no prohibition against Timothy McCoy himself transferring the assets to others.

On the same day that Mr. James sold ARC to Timothy McCoy, Timothy transferred the business assets of ARC to ACMV. (Pl.'s Ans. to Defs.' Interrog., Defs.' Ex. A at 6). The transfer from ARC to ACMV occurred before Timothy McCoy made any payment to Mr. James under the Modified Sales Agreement. (Pl.'s Ans. to Defs.' Interrog., Defs.' Ex. A at 6). The transfer of ARC from Timothy McCoy to ACMV was an undocumented transaction. (Pl.'s Ans. to Defs.' Interrog., Defs.' Ex. A at 6). There was no bill of sale, no promissory note, no security agreement, no closing statement, and no corporate minutes or other records documenting the sale. (Pl.'s Ans. to Defs.' Interrog., Defs.' Ex. A at 6). Timothy McCoy never told Mr. James of the sale of ARC to ACMV. (Pl.'s Ans. to Defs.' Interrog., Defs.'s Ex. A at 6). All payments received by Mr. James were made from Timothy McCoy's personal checking account. (Pl.'s Ans. to Defs.' Interrog., Defs.'s Ex. A at 6). ACMV issued a promissory note to Timothy McCoy in exchange for the assets of the business. (Pl.'s Ans. to Defs.' Interrog., Defs.' Ex. A at 6). Throughout 1984 and 1985 the four McCoys repeatedly held themselves out as co-owners of ARC, and at no time did they inform Mr. James that the ARC business had been sold to ACMV. (Pl.'s Ans. to Defs.' Interrog., Defs.' Ex. A at 7).

On May 24, 1985, knowing that Mr. James was preparing to file a complaint in Knox County against Timothy McCoy to enforce payment of the promissory note, Timothy McCoy filed a RICO action against Mr. James in federal district court for violation of the noncompetition agreement in the contract of sale. (Pl.'s Ans. to Defs.' Interrog., Defs.' Ex. A at 7). The corporation was not made a party to this lawsuit, but later claimed it was the proper party. (Pl.'s Ans. to Defs.' Interrog., Defs.' Ex. A at 7). Mr. James alleges that Defendants entered into this deception to distract Mr. James from the fact that ARC had been sold to ACMV. (Pl.'s Ans. to Defs.' Interrog., Defs.' Ex. A at 7).

When Timothy McCoy's racketeering action was dismissed, Mr. James filed a lawsuit in the Court of Common Pleas of Knox County, Ohio to collect on the amount due under the Modified Sales Agreement. (Pl.'s Ans. to Defs.' Interrog., Defs.' Ex. A at 7). On October 8, 1986, Timothy McCoy counterclaimed on the ground that Mr. James had violated the

noncompetition agreement. (Pl.'s Ans. to Defs.' Interrog., Defs.'s Ex. A at 7). At no time during the Knox County lawsuit did Defendants defend on the basis that Timothy McCoy was not the proper party to the suit, nor did Defendants disclose that ARC had been sold. (Pl.'s Ans. to Defs.' Interrog., Defs.' Ex. A at 7).

Mr. James alleges that from 1984 to 1988, the four McCoys repeatedly distributed dividends and capital from ACMV to themselves to the prejudice of creditors of ACMV. (Pl.'s Ans. to Defs.' Interrog., Defs.' Ex. A at 7–8). Timothy McCoy turned his stock back to the corporation for no consideration. (Pl.'s Ans. to Defs.' Interrog., Defs.' Ex. A at 8). Timothy McCoy made no effort to collect the moneys owed to him from the corporation during a five year period extending from 1984 through 1989, thereby prejudicing the creditors of ACMV. (Pl.'s Ans. to Defs.' Interrog., Defs.' Ex. A at 11).

On January 14, 1988. ACMV formed a subsidiary called McCoy Tanning Center, Inc. (Pl.'s Ans. to Defs.' Interrog., Defs.'s Ex. A at 8). The subsidiary's name was subsequently changed to McCoy's Home Furnishings, Videos and More, Inc., (Pl.'s Ans. to Defs.' Interrog., Defs.' Ex. A at 8). Throughout the late 1980s and through 1991, the four McCoys jointly engaged in a series of businesses operating under various trade names, including: Appliance Center of Mt. Vernon, Inc., Hoagland Electric, McCoy's Home Furnishings, T–N–T Tape Rental, Newark Magnavox, McCoy's Incl, Appliance Repair Center, and Sunnyside Tanning. (Pl.'s Ans. to Defs.' Interrog., Defs.' Ex. A at 8). The four McCoys and ACMV also formed a subsidiary called Newark Magnavox and Appliance Center, Inc. (Pl.'s Ans. to Defs.' Interrog., Defs.' Ex. A at 8). ACMV entered into a joint venture with Marion Appliance, Inc. and Blevins Appliance and Electronics, Inc. (Pl.'s Ans. to Defs.' Interrog., Defs.' Ex. A at 8). Mr. James alleges that through the use of these various joint ventures, intertwining corporations, and through distributions to the principals, the four McCoys engaged in a series of transactions to leave Timothy McCoy with no assets in his name. (Pl.'s Ans. to Defs.' Interrog., Defs.' Ex. A at 8).

In October of 1988 Timothy McCoy filed a petition in bankruptcy. *See In re McCoy,* 114 B.R. 489 (Bankr.S.D.Ohio 1990). Timothy McCoy represented to the bankruptcy court that the business and the debt to Mr. James were his, and claimed he had no assets. (Pl.'s Ans. to Defs.' Interrog., Defs.' Ex. A at 7). Timothy McCoy did not list the debt from ACMV to himself as an asset. (Pl.'s Ans. to Defs.' Interrog., Defs.' Ex. A at 7). In 1985, Timothy and Teresa McCoy sold their house to Kevin and Karma Lamb and retained an unrecorded mortgage in the property. (Pl.'s Ans. to Defs.' Interrog., Defs.' Ex. A at 10). The mortgage was not paid off until March of 1992, four years after Timothy McCoy filed for bankruptcy. (Pl.'s Ans. to Defs.' Interrog., Defs.' Ex. A at 10). The existence of this property interest was never disclosed to the bankruptcy court or the trustee in bankruptcy.

Mr. James subsequently filed a petition in the bankruptcy court requesting that the debt owed by Timothy McCoy on the April 25, 1984 promissory note be deemed non-dischargeable. *See James v. McCoy,* 114 B.R. 489 (Bankr.S.D.Ohio 1990). On May 10, 1990, the bankruptcy court issued an order finding that Timothy McCoy's debt to Mr. James was non-dischargeable because Timothy McCoy purchased ARC from Mr. James by false pretenses, false representations, and actual fraud. *See James v. McCoy,* 114 B.R. at 499. The bankruptcy court entered judgment in favor of Mr. James in the amount of $171,-347.19. (Amended Judgment Entry, *James v. McCoy,* 114 B.R. 489 (Bankr. S.D.Ohio 1990)).

On August 13, 1990, Teresa McCoy and Karma Lamb, employee of ACMV, appeared before the trustee in bankruptcy, and presented financial statements and testimony purporting to set forth the fi-

nancial status of ACMV. (Pl.'s Ans. to Defs.' Interrog., Defs.' Ex. A at 12). Mr. James alleges that Teresa McCoy failed to state the full extent of the assets of ACMV. (Pl.'s Ans. to Defs.' Interrog., Defs.' Ex. A at 12).

On May 8, 1991, by and through the trustee in bankruptcy, Mr. James compromised a noncompetition agreement claim alleged by Timothy McCoy by paying the trustee $2050. (Pl.'s Ans. to Defs.' Interrog., Defs.' Ex. A at 11). Timothy McCoy and ACMV later claimed that the noncompetition contract rights had been transferred from himself to ACMV. (Pl.'s Ans. to Defs.' Interrog., Defs.' Ex. A at 11). Mr. James alleges that as a result, the trustee was obligated to defend the same claim by ACMV in *Ransier v. Appliance Center of Mt. Vernon*, Adv. Pro. No. 2–90–0278 (Bankr.S.D.Ohio).

The trustee of Timothy McCoy's bankruptcy estate filed an adversary proceeding against ACMV to recover $14,215 in wages owed Timothy McCoy and $95,-265.27 owed him for the purchase of ARC. The bankruptcy judgment against ACMV was in the amount of $145,531.48, with interest at 12% a year from December 1990 on the sum of $125,280.97. (Judgment Entry, *Ransier v. Appliance Center of Mt. Vernon*, Adv. Pro. No. 2–90–278 (Bankr.S.D.Ohio Sept. 17, 1991)). On November 22, 1991 the trustee, Richard James, and Teresa McCoy reached a proposed compromise and sale of rights in the judgment against ACMV. The trustee proposed to accept $5,100 from Teresa McCoy in payment for the judgment. The trustee stated that ACMV had "closed its doors and is no longer operating making collection of [the $145,531.48] judgment questionable." (Application to Compromise Claim, Att. to Pl.'s Mem. in Opp.). Mr. James agreed to and did not object to the Application. On March 4, 1992 the bankruptcy court entered an order approving the unopposed application to compromise the judgment against ACMV.

Mr. James alleges that between September 1991 and December 1991, Defendants communicated to the trustee in bankruptcy, by mail and by facsimile, and informed the trustee that ACMV had closed its doors. (Pl.'s Ans. to Defs.' Interrog., Defs.'s Ex. A at 12). Based upon this information, the trustee in bankruptcy made the following finding of fact on December 5, 1991:

> [I]t would be in the best interest of the estate to the aforestated compromise and sale of the judgment for the reason that Appliance Center of Mt. Vernon is no longer an operating business, the principals are now residing outside of the state, making the collection of the judgment difficult and unlikely.

(Pl.'s Ans. to Defs.' Interrog., Defs.' Ex. A at 13). Although Mr. James alleges that ACMV in fact continued to engage in business and that Defendants deceived the trustee in bankruptcy by providing him with false information (Pl.'s Ans. to Defs.' Interrog., Defs.' Ex. A at 13), Mr. James offers no admissible evidence to support that assertion.

Mr. James alleges that throughout August and September, 1991, Defendants loaded inventory and equipment of ACMV and the related businesses into a Ryder rental truck. (Pl.'s Ans. to Defs.' Interrog., Defs.' Ex. A at 12). The approximate value of the inventory and equipment is believed to be approximately $250,000. (Pl.'s Ans. to Defs.' Interrog., Defs.' Ex. A at 12). Mr. James alleges that some of these items were sold in sales and auctions in violation of the Ohio Uniform Bulk Sales Act. (Pl.'s Ans. to Defs.' Interrog., Defs.' Ex. A at 12). Mr. James further alleges that the McCoys and employees of ACMV transported the remaining inventory and assets to Kansas, where they are now engaged in the business of selling or repairing appliances, furniture, jewelry, and a number of other businesses. (Pl.'s Ans. to Defs.' Interrog., Defs.' Ex. A at 18). Mr. James asserts that he first learned of the intended sale in September of 1991, and

became aware in October of 1991 that property was transported to Kansas. (Pl.'s Ans. to Defs.' Interrog., Defs.' Ex. A at 18).

Timothy McCoy's bankruptcy proceeding ended on March 19, 1993. Mr. James filed this action on July 7, 1995.

## DISCUSSION

Mr. James brings the following claims against Defendants:

Claim One: Violation of § 17 of the Securities Act of 1933

Claim Two: Violation of the Ohio Securities Act

Claim Three: Violation of § 10(b) of the Securities Exchange Act

Claim Four: Fraudulent Conveyance

Claim Five: Fraud upon the Trustee at Bankruptcy

Claim Six: Fraudulent Conveyance and Illegal Distribution of Assets

Claim Seven: Illegal Distributions

Claim Eight: Preference of Creditors in violation of Chapter 1331 and 1336

Claim Nine: Racketeering in violation of 18 U.S.C. § 1961

Claim Ten: Engaging in a Pattern of Corrupt Activity in violation of Ohio law

Defendants argue that summary judgment should be entered in their favor on all of these claims. Specifically, Defendants argue that Claims One, Two, Three, Four, Six, Seven, Eight, Nine, and Ten are barred by statutes of limitations: that Claims Five, Nine, and Ten fail to state a claim; and that Claims One, Two, Three, Four, Five, Six, Seven, Eight, Nine, and Ten, as against Timothy McCoy, are barred by the doctrine of *res judicata*.

Mr. James argues that Defendants are not entitled to judgment on these grounds, and that he is entitled to summary judgment on Claim Nine.

## I. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants have filed a motion for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. Rule 56(c) provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c). The plain language of this rule mandates summary judgment, after adequate time for discovery and upon motion, against a party who fails to establish an essential element upon which that party will bear the burden of proof at trial. *See Celotex v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

To avoid summary judgment, the non-moving party must demonstrate that there is a genuine issue of material fact. "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment...." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The standard for summary judgment mirrors that of Rule 50(a) for a directed verdict; that is, under the governing law, there can be but one reasonable conclusion as to the verdict. *See id.* at 250, 106 S.Ct. 2505. Thus, there must be evidence presented in the record upon which a reasonable jury could find for the opposing party. *See id.* at 252, 106 S.Ct. 2505.

### A. *Statutes of Limitations*

Defendants argue that Claims One, Two, Three, Four, Six, Seven, Nine, and Ten are barred by the applicable statutes of limitations.

### 1. Claim One: Violation of the Securities Act of 1933

Mr. James alleges that in 1982 Defendants utilized the telephone and mails in interstate commerce to obtain ARC from Mr. James in conjunction with the issuance of a promissory note by Timothy McCoy. (Compl.¶ 16). Mr. James alleges that the conduct of Defendants acted as a fraud upon Mr. James in violation of § 17(a) of the Securities Act of 1933. *See* 15 U.S.C. § 77q(a) (1997).

Defendants argue that Mr. James knew of fraud at the latest in May of 1990, when the bankruptcy court entered its order finding that Timothy McCoy's debt to Mr. James was non-dischargeable. The bankruptcy court stated in its findings of fact that Timothy McCoy conspired with his wife and his parents to defraud Mr. James. Mr. James concedes that he knew or had reason to know of the basis of this claim in May of 1990. (Pl.'s Mem. in Opp. at 15; Pl.'s Resp. to Defs.' Req. for Adm. No. 3, Defs.' Ex. B). Mr. James filed this action on July 7, 1995.

Defendants, citing *Lampf v. Gilbertson,* 501 U.S. 350, 111 S.Ct. 2773, 115 L.Ed.2d 321, (1991), argue that the applicable limitations period for this claim is three years and that this claim is therefore barred. The Supreme Court in *Lampf* held that the limitations period for violation of § 10(b) of the Securities Exchange Act of 1934 ("SEA") should be determined by federal law, and that § 10(b) actions should be brought within one year of discovery ad three years from the illegal act. *See* 501 U.S. at 359–62, 111 S.Ct. 2773

(adopting limitations period set forth in 15 U.S.C. § 77m).

Mr. James suggests that the holding in *Lampf* may not be applicable to claims under § 17 of the Securities Act of 1933. (Pl.'s Mem. in Opp. at 19 n. 9).[1] The Supreme Court in *Lampf* did not state that its holding applied to actions brought pursuant to § 17 of the Securities Act. Prior to the Supreme Court's holding in *Lampf,* the Sixth Circuit had held that the limitations period for such actions should be borrowed from state law, and applied Ohio's four year statute of limitations for fraud to a plaintiff's § 17(a) claim. *See Marx v. Centran Corp.,* 747 F.2d 1536, 1551 (6th Cir.1984). The Court must determine whether this holding remains good law after *Lampf.*[2]

The Supreme Court in *Lampf* noted that when Congress fails to provide a statute of limitations for a federal cause of action, a court "borrows" the local time limitation most analogous to the case at hand. *See Lampf,* 501 U.S. at 355, 111 S.Ct. 2773. The Supreme Court found that an exception to this rule exists:

> " 'when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking.' "

*Id.* at 356, 111 S.Ct. 2773 (quoting *Reed v. United Transportation Union,* 488 U.S. 319, 324, 109 S.Ct. 621, 102 L.Ed.2d 665 (1989)).

---

1. The text in Plaintiff's Memorandum, and in all other pleadings submitted by Plaintiff, is single-spaced in violation of Local Rule 5.1, which provides that "[a]ll pleadings, motions, briefs, and other papers presented to the Clerk for filing shall be ... double-spaced, except for quoted material." S.D.Ohio L.R. 5.1(a).

2. In fact, the Supreme Court has reserved decision on the issue of whether § 17 of the Securities Act permits private causes of action. *See Bateman Eichler, Hill Richards, Inc.*

*v. Berner,* 472 U.S. 299, 304 n. 9 (1985). The Sixth Circuit has held that § 17(a) of the Securities Act provides a private cause of action for "purchasers." *See Craighead v. E.F. Hutton & Co., Inc.,* 899 F.2d 485, 492 (6th Cir.1990). Thus, the Court must decide whether the Supreme Court would apply the holding in *Lampf* to cases brought under § 17(a) in the event that the Supreme Court found that the statute permits private causes of action.

In the only reported case to address the issue, a federal district court has held that the holding in *Lampf* should be applied to actions under § 17(a) of the Securities Act. *See Cooperativa Ahorro y Credito Aguada v. Kidder, Peabody & Co.*, 777 F.Supp. 153, 156 (D.P.R.1991). The court in *Cooperativa Ahorro* noted that the language of § 10(b) of the SEA is modeled directly on § 17(a) of the Securities Act. *See id.* The court found that the same limitations period should apply to both statutes because the statutes were so similar, and because a plaintiff could use § 17(a) to circumvent the limitations period of § 10(b) of the SEA. *See id.*

■ Moreover, in *Lampf*, the Supreme Court reasoned that "where ... the claim asserted is one implied under a statute that also contains an express cause of action with its own time limitation, a court should look first to the statute of origin to ascertain the proper limitations period." *Lampf*, 501 U.S. at 359, 111 S.Ct. 2773. This same reasoning applies to § 17(a) of the Securities Act. Like § 10(b) of the SEA, § 17(a) of the Securities Act does not expressly provide for a private cause of action. Thus, any possible cause of action under § 17(a) must be implied. For these reasons, the Court finds that the holding in *Lampf* should be extended to apply to claims brought under § 17(a) of the Securities Act. Thus, Mr. James must bring his § 17(a) claim within one year of discovery of the fraud and within three years of the sale of the security. *See Lampf*, 501 U.S. at 364, 111 S.Ct. 2773 (adopting limitations period contained in 15 U.S.C. § 77m).

Mr. James did not bring this action within one year of discovery of the fraud or within three years of the date of sale. The three-year period is the outside limit for private causes of action. *See* 15 U.S.C. § 77m ("In no event shall any action ... be brought ... more than three years ... after the sale."). Timothy McCoy issued the promissory note on behalf of Mr. James on April 25, 1984. He was therefore required to bring any action under § 17(a) of the Securities Act by April 25, 1987. Mr. James argues that the limitations period was tolled during the pendency of Timothy's McCoy's bankruptcy proceeding. However, Timothy McCoy did not file for bankruptcy protection until 1988, after the limitations period had run. The Court therefore finds that Mr. James's claims under § 17(a) of the Securities Act are barred by the applicable statute of limitations. *See* 15 U.S.C. § 77m.

### 2. Claim Two: Violation of the Ohio Securities Act

Claim Two alleges violation of Ohio Revised Code Sections 1707.44(G) and 1707.43. Defendants argue that § 1707.43 has a two-year statute of limitations, and that § 1707.44 has a three-year statute of limitations. *See* Ohio Rev.Code Ann. §§ 1707.43, 1707.28. Defendants argue that Mr. James knew or had reason to know of the basis for these claims in May of 1990 at the latest. Mr. James concedes that this claim is outside the limitations period, regardless of any tolling, and that the claim is viable only as a predicate act for his RICO claim. (Pl.'s Mem. in Opp. at 19).

### 3. Claim Three: Violation of § 10(b) of the Securities Exchange Act

Section 10(b) of the Securities Exchange Act of 1934 makes unlawful the use of any manipulative or deceptive device in the sale or exchange of securities. As previously discussed, a § 10(b) claim must be brought within one year of discovery, and three years of the violation. *See Lampf*, 501 U.S. at 362, 111 S.Ct. 2773 (adopting limitations period set forth in 15 U.S.C. § 77m).

■ Mr. James did not bring this action within three years of the date of sale, the outside limit for private causes of action. *See* 15 U.S.C. § 77m ("In no event shall any action ... be brought ... more than three years ... after the sale."). Timothy

McCoy issued the promissory note on behalf of Mr. James on April 25, 1984. He was therefore required to bring any action under § 10(b) of the SEA by April 25, 1987. Mr. James argues that the limitations period was tolled during the pendency of Timothy's McCoy's bankruptcy proceeding. However, Timothy McCoy did not file for bankruptcy protection until 1988, after the limitations period had run. The Court therefore finds that Mr. James's claims under § 10(b) of the SEA are barred by the applicable statute of limitations. *See* 15 U.S.C. § 77m.

### 4. Claim Four: Fraudulent Conveyance

In Claim Four, Mr. James alleges that Timothy McCoy's transfer of assets to his wife, Teresa McCoy, constitute a fraudulent conveyance pursuant to Ohio Revised Code Chapters 1313 and 1336. (Compl.¶ 24). Mr. James alleges that these transfers took place between 1983 and 1985. (Compl.¶¶ 13.34–13.39).

The Ohio Uniform Fraudulent Transfer Act is codified in Chapter 1336 of the Ohio Revised Code. The statute of limitations for Chapter 1336 is set out in § 1336.09. Section 1336.09 provides for periods of limitation which vary depending upon the section of Chapter 1336 which is alleged to have been violated. Mr. James does not allege which sections of Chapter 1336 were violated by Defendants, so the Court will consider all of the possible limitations periods contained in § 1336.09.

■ If a transfer is alleged to be fraudulent pursuant to § 1336.05(B), actions must be brought within one year after the fraudulent transfer was made or the obligation to the creditor was incurred. *See* Ohio Rev.Code Ann. § 1336.09(C)

(Anderson 1993). The purchase of ARC from Mr. James took place in May of 1984, and the transfers from Timothy McCoy to his wife Teresa cited in the Complaint are alleged to have occurred between 1983 and 1985. (Compl.¶ 13(39)). Thus, Mr. James was required to bring these claim at the latest by 1986. Timothy McCoy did not file for bankruptcy until 1988, so no tolling would apply. Because Mr. James did not file this action until 1995, any possible claim under § 1336.05(B) is clearly barred by the statute of limitations.

For a violation of § 1336.05(A) or § 1336.04(A)(2), the action must be brought within four years after the transfer was made or the obligation was incurred. *See* Ohio Rev.Code Ann. § 1336.09(B) (Anderson 1993). The last alleged transfer took place before the end of 1985, and Mr. James was required by the statute of limitations to bring these claims by the end of 1989 at the latest. (Compl.¶ 13.39).

Mr. James argues that these claims are tolled by Timothy McCoy's bankruptcy action, and did not begin to run until the bankruptcy court issued its final order closing the estate on March 19, 1993. The Bankruptcy Code provides that the filing of a petition in bankruptcy operates as a stay precluding the commencement or continuation of judicial proceedings against the debtor on any claim that "was or could have been commenced" before the filing of the petition. 11 U.S.C. § 362(a)(1) (1993). Even assuming that this claim is one that "could have been commenced" before the filing of the petition and that the stay is therefore applicable,[3] Mr. James's claims were not tolled by the automatic stay. The stay does not "toll" the running of a

---

**3.** An issue exists as to whether Mr. James's fraudulent transfer claims "could have been commenced" before the filing of the bankruptcy petition, as provided in § 362(a)(1), because some of the claims did not accrue until Mr. James discovered the fraud. If, on this basis, the claim is considered to be one that arose after the filing of the bankruptcy

petition, the stay is not applicable, and Mr. James's claims are clearly barred. *See Aracich v. Wheeling–Pittsburgh Steel Corp.,* No. 91–3825, 1992 WL 92733, at *1 (6th Cir. May 5, 1992) (automatic bankruptcy stay does not apply to post-petition claims) (citing *In re Petruccelli,* 113 B.R. 5, 6 (S.D.Calif.1990)).

statute of limitations as the term is commonly used. Rather, § 108(c) of the Bankruptcy Code governs and provides an alternative form of relief for claimants whose claims would expire while the stay is in effect.

Section 108(c) provides that where a statute of limitations applies to a claim against a debtor, and the limitations period has not expired before the date of the filing of the bankruptcy petition, then the limitations period does not expire "until the later of—(1) the end of such period, . . .; or (2) 30 days after notice of the termination or expiration of the stay. . . ." 11 U.S.C. § 108(c) (1993). The Sixth Circuit has held that § 108(c) preserves or extends a statute of limitations that would expire while a stay is in effect, but does not otherwise alter a limitations period that would expire after the termination of the stay. See In re Klingshirn, 209 B.R. 698, 702 (B.A.P. 6th Cir.1997). Thus, § 108(c) does not "toll" the limitations period, but merely permits a claimant whose cause of action expires during the bankruptcy proceeding to bring an action within thirty days after notice of the termination of the stay. See In re Baird, 63 B.R. 60, 62–63 (Bankr.W.D.Ky.1986).

Because the limitations period for these claims expired during the pendency of Timothy McCoy's bankruptcy action. Mr. James was required to bring the claims within thirty days after notice of the termination of the stay. See 11 U.S.C. § 108(c). The stay ended on March 19, 1993, but Mr. James did not file this action until July 7, 1995. The Court therefore holds that any claims under Sections 1336.05(A) or 1336.04(A)(2) are barred by the statute of limitations. See Ohio Rev. Code Ann. § 1336.09(B).

For a violation of § 1336.04(A)(1), the action must be brought "within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or reasonably could have been discovered by the claimant." Ohio Rev.Code Ann. § 1336.09(A) (Anderson 1993). The Court has already determined that the four year limitations period had run before Mr. James filed this action, even considering the application of the bankruptcy stay. However, § 1336.09(A) provides for an alternative one-year limitations period following the discovery of the transfer. The Court must therefore consider whether Mr. James could have filed this action pursuant to that provision.

Mr. James was aware of these fraudulent transactions at least by May of 1990, when the bankruptcy court issued its order. Thus, in the absence of tolling, Mr. James was required to file any claim under § 1336.04(A)(1) by May of 1991. Because this limitations period ended during the pendency of Timothy McCoy's bankruptcy action, Mr. James was required to bring the claims within thirty days after notice of the termination of the stay. See 11 U.S.C. § 108(c). The stay ended on March 19, 1993, but Mr. James did not file this action until July 7, 1995. The Court therefore finds that Mr. James's § 1336.04(A)(1) claims are barred by the statute of limitations.

The Court has found that all claims under Chapter 1336 are barred by the statute of limitations. Mr. James argues that he may still bring claims under Ohio Revised Code § 1313.56, Ohio's "ancient" fraudulent conveyance statute. Mr. James contends that this statute has no limitations period. Although the statute does not expressly contain a limitations period, Ohio courts have interpreted this statute, formerly codified as Ohio General Code § 11104, to have a limitations period of four years following discovery. See, e.g., First & Citizens' Nat'l Bank of Elizabeth City v. Seip, 43 Ohio App. 440, 183 N.E. 448, 448 (Ohio Ct.App.1931). Mr. James did not file this action until July of 1995, more than four years after May of 1990, when Mr. James admits he knew of the fraud.

Mr. James argues, however that the limitations period was tolled during the pendency of Timothy McCoy's bankruptcy action. Even assuming that this claim is one that "could have been commenced" before me filing of the petition and that the stay is therefore applicable, Mr. James's claims are barred by the statute of limitations. As previously discussed, § 108(c) does not "toll" the limitations period, but merely permits a claimant whose cause of action expires during the bankruptcy proceeding to bring an action within thirty days after notice of the termination of the stay. *See Baird*, 63 B.R. at 62–63. In the absence of tolling, Mr. James's § 1313.56 claims would have expired in May of 1994. In May of 1994, the stay had been lifted for over a year, and did not preclude Mr. James from bringing the claims. Accordingly, the Court finds that Mr. James's § 1313.56 claims are barred for failure to file within the four-year limitations period.

### 5. Claim Six: Fraudulent Conveyance and Illegal Distribution of Assets

In Claim Six, Mr. James alleges that in September 1991 Defendants sold assets of ACMV in a commercially unreasonable manner, and converted the remaining assets of ACMV and Timothy McCoy to the other three individual defendants. (Compl.¶ 35). Mr. James alleges that Teresa, Eugene, and Sylvia McCoy converted these assets to their own benefit in violation of Ohio Revised Code Chapters 1313 and 1336 and Ohio Revised Code § 1701.95.

The limitations period for § 1313.56 is four years from the discovery of the fraud. *See Seip*, 183 N.E. at 448. Because Mr. James filed this action against Defendants within four years of the transaction, he necessary filed it within four years of discovery. These claims under § 1313.56 are not barred by the limitations period.

If a transfer is alleged to be fraudulent pursuant to § 1336.05(B), actions must be brought within one year after the fraudu-

lent transfer was made or the obligation to the creditor was incurred. *See* Ohio Rev. Code Ann. § 1336.09(C). The limitations period for this claim expired in the Fall of 1992. Mr. James argues that the limitations period was tolled by the bankruptcy stay. Because the alleged fraudulent transactions took place in 1991, these claims could not have been commenced before Timothy McCoy's bankruptcy petition was filed. Thus, pursuant to the Bankruptcy Code, the stay would not have applied *See* 11 U.S.C. § 362(a)(1). Because Mr. James argues that the property sold belongs to Timothy McCoy, and seeks to void these transactions, Mr. James arguably seeks to "exercise control over property of the estate," which would make the stay applicable. 11 U.S.C. § 362(a)(3) (1993). Regardless of whether the stay is applicable, Mr. James's claims are barred by the statute of limitations. If the stay did not apply, Mr. James was required to bring this action by the Fall of 1992. If the stay applied to the claim, because the limitations period expired during the pendency of the stay, Mr. James was required to bring this claim within thirty days after notice of the termination of the stay. *See* 11 U.S.C. § 108(c). The stay expired on March 19, 1993, but Mr. James did not file this action until 1995. The Court therefore finds that this claim is barred by the statute of limitations.

For a violation of § 1336.05(A) or § 1336.04(A)(2), the action must be brought within four years after the transfer was made or the obligation was incurred. *See* Ohio Rev.Code Ann § 1336.09(B). For a violation of § 1336.04(A)(1), the action must be brought "within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or reasonably could have been discovered by the claimant." Ohio Rev.Code Ann. § 1336.09(A). Mr. James filed this action within four years of the transfer, so the claims under § 1336.05(A) and

§ 1336.04(A) are not barred by the statute of limitations.

Mr. James also brings claims under § 1701.95. Defendants argue that the applicable limitations period for § 1701.95 is two years. *See* Ohio Rev.Code Ann. § 1701.95(F) (Anderson 1997). Mr. James argues that the limitations period set forth in § 1701.95(F) applies only to derivative actions. Mr. James is correct; however, the limitations period applies only to derivative actions because § 1701.95 provides only for derivative actions. *See Schaefer v. De Chant*, 11 Ohio App.3d 281, 464 N.E.2d 583, 585 (Ohio Ct.App.1983). Section 1701.95(A)(1) provides that directors of a corporation "shall be jointly and severally liable *to the corporation.*" Ohio Rev.Code Ann. § 1701.95(A)(1) (Anderson 1997) (emphasis added). In addition, the provision setting the limitations period refers to actions "brought by or on behalf of a corporation." Ohio Rev.Code Ann. § 1701.95(F). In *Schaefer*, the Ohio appellate court held that "pursuant to the clear and unambiguous language of the statute, the liability imposed upon directors of corporations by the provisions of R.C. 1701.95 runs to the corporation." *Schaefer*, 464 N.E.2d at 585. The Ohio court therefore held that actions under § 1701.95 must be brought against a director by or on behalf of the corporation, not by a creditor of the director. *See id.*

Mr. James argues that § 1701.95(G) provides for liability to creditors. Section 1701.95(G) provides that:

Nothing contained in this section shall preclude a creditor whose claim is unpaid from exercising the rights that that creditor otherwise would have by law to enforce that creditor's claim against assets of the corporation paid or distributed to shareholders.

Ohio Rev.Code Ann. § 1701.95(G) (Anderson 1997). The court in *Schaefer* rejected the argument now made by Mr. James, finding that § 1701.95(G) "simply provides that a creditor shall not be precluded by R.C. 1701.95 from exercising any

other legal remedy available to enforce his claim." *Schaefer*, 464 N.E.2d at 585. Mr. James has pointed to no Ohio case contrary to *Schaefer*, and this Court finds that the Supreme Court of Ohio would issue a similar holding if presented with the issue. *See In re Flexible*, 74 B.R. 917, 922 (Bankr.N.D.Ohio 1987) (following the holding in *Schaefer*).

■ Mr. James's claim is not brought by or on behalf of a corporation. Because § 1701.95 provides only for derivative actions brought by or on behalf a corporation, Mr. James cannot obtain relief from Defendants pursuant to this statute. Accordingly, the Court finds that Mr. James's claim under § 1701.95 fails to state a claim upon which relief can be granted, and the Court need not determine whether the statute of limitations bars the claims. *See* Fed.R.Civ.P. 12(b)(6).

### 6. Claim Seven: Illegal Distributions

In Claim Seven, Mr. James alleges that between 1985 and 1991 ACMV paid dividends to Sylvia, Eugene, and Teresa McCoy in violation of Ohio Rev.Code § 1701.95(A)(1)(a). (Compl.¶39). Mr. James also alleges that between 1985 and 1991 ACMV repaid its debt to Eugene McCoy in violation of § 1701.95. (Compl.¶40). Mr. James further alleges that all four McCoys are liable under § 1701.95(A)(2) as directors of ACMV and under § 1701.95(D) as shareholders of ACMV. As previously discussed, a § 1701.95 claim must be brought by or on behalf of a corporation. *See Schaefer*, 464 N.E.2d at 585. Accordingly, Mr. James's claims under § 1701.95 fail to state a claim upon which relief can be granted. *See* Fed.R.Civ.P. 12(b)(6).

### 7. Claim Nine: Federal RICO Violation

In Claim Nine, Mr. James alleges that Defendants conspired to engage in a pattern of racketeering activity using the instrumentalities of interstate commerce,

telephone wires, and the mail. (Compl.¶¶ 46–47).

Mr. James concedes that the four-year limitations period contained in the Clayton Act applies to all civil RICO claims. *See Agency Holding Corp. v. Malley–Duff & Assoc., Inc.,* 483 U.S. 143, 156, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987). Mr. James argues, however, that the commencement of a limitations period for a RICO claim begins at the date of the last predicate act or the date of the last overt act causing injury. The Supreme Court has explicitly rejected this argument. *See Klehr v. A.O. Smith Corp.,* 521 U.S. 179, 117 S.Ct. 1984, 1989, 138 L.Ed.2d 373 (1997) (holding that the last predicate act accrual rule was not a proper interpretation of RICO). Federal courts of appeal have applied two other accrual rules to civil RICO claims: the discovery rule and the *Bivens* or compromise rule. Under the discovery rule, the action accrues when the plaintiff knows or should know of the existence of the fraudulent scheme. *See Caproni v. Prudential Securities, Inc.,* 15 F.3d 614, 619 n. 6 (6th Cir.1994). Under the *Bivens* or compromise rule, the action " 'begins to accrue as soon as the plaintiff discovers, or reasonably should have discovered, both the existence and source of his injury and that the injury is part of a pattern.' " *Agristor Financial Corp. v. Van Sickle,* 967 F.2d 233, 241 (6th Cir.1992) (quoting *Bivens Gardens Office Bldg., Inc. v. Barnett Bank of Florida, Inc.,* 906 F.2d 1546, 1554–55 (11th Cir.1990)). The Supreme Court discussed these two accrual rules in *Klehr,* but declined to set forth the appropriate rule for civil actions under RICO. *See* 117 S.Ct. at 1991–92.

The Sixth Circuit has also declined to decide which of the two remaining rules is the appropriate standard. *In Agristor,* the Sixth Circuit found that the RICO claim was barred under the more liberal *Bivens* rule, and was necessarily barred under the more restrictive discovery rule. *See Caproni,* 15 F.3d at 619 (citing *Agristor,* 967 F.2d at 241–42). The Sixth Cir-

cuit therefore was not required to decide this issue. This Court similarly finds that it is not necessary to decide the appropriate standard in this case.

Applying the rule more favorable to Mr. James, the *Bivens* rule, the action accrues when " 'the plaintiff discovers, or reasonable should have discovered, both the existence and source of his injury and that the injury is part of a pattern.' " *Agristor,* 967 F.2d at 241 (quoting *Bivens,* 906 F.2d at 1554–55). A "pattern" under RICO consists of "at least two acts of racketeering activity, one of which occurred after [October 15, 1970], and the last of which occurred within ten years ... after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5) (1984).

■ As of May 1990, Mr. James was aware that Defendants had engaged in a series of transactions and misrepresentations taking place from 1984 to 1990 which were part of a scheme to defraud. The Court therefore finds that by May of 1990 Mr. James knew or should have known of the existence and source of his injury and that the injury was part of a pattern of activity. Mr. James was therefore required to file any RICO action based upon these claims by May of 1994. The bankruptcy stay was lifted on March 19, 1993, and would not have precluded Mr. James from filing a RICO action in 1994. *See Klingshirn,* 209 B.R. at 702. Accordingly, the Court finds that Mr. James's RICO claims related to these transactions are barred under the *Bivens* accrual rule. The claims would also be barred under the discovery rule because Mr. James was aware of his injury by May of 1990.

■ Mr. James also alleges that racketeering activity took place in the Fall of 1991, within the four year limitations period. (Compl.¶¶ 26, 35). Any racketeering activity that took place at this time may give rise to a RICO claim. *See Klehr,* 117 S.Ct. at 1991. However, a "plaintiff cannot use an independent, new predicate act as a bootstrap to recover for injuries caused by

other earlier predicate acts that took place outside the limitations period." *Id.* Thus, Mr. James allegations of activity within the limitations period may give rise to an independent RICO claim, but they do not permit him to recover for the previous conduct which was discovered more than four years before this action was filed. Accordingly, Mr. James's allegations of activity in the Fall of 1991 are not barred by the statute of limitations, but these allegations alone must fulfill the elements of a RICO claim.

### 8. Claim Ten: Engaging in a pattern of corrupt activity

■ In Claim Ten, Mr. James alleges that Defendants have participated in a pattern of corrupt activity in violation of the Ohio Corrupt Activities Act. *See* Ohio Revised Code § 2923.32. The statute of limitations for the Ohio Corrupt Activities Act provides that an action must be brought "within five years after the unlawful conduct terminates or the cause of action accrues." Ohio Rev.Code Ann. § 2923.34(K) (Anderson 1996). No Ohio court has issued an opinion on the issue of when a § 2923.32 action accrues, but this court has previously held that a cause of action under § 2923.32 accrues when the fraud or wrongful conduct was or should have been discovered. *See Baker v. Pfeifer,* 940 F.Supp. 1168, 1181 (S.D.Ohio 1996).

Mr. James was aware of all wrongful conduct related to the sale of ARC by May of 1990, and was therefore required to bring any § 2923.32 action based upon this conduct by May of 1995. *See* Ohio Revised Code § 2923.32(K); *Baker,* 940 F.Supp. at 1181. Mr. James did not file this action until July 7, 1995. As previously discussed, the bankruptcy stay was lifted on March 19, 1993, and would not have precluded Mr. James from bringing this claim in May of 1995. Mr. James's § 2923.32 claims related to the sale of ARC are barred by the statute of limitations. Mr. James's § 2923.32 claims related to Defendants conduct in the Fall of

1991 fall within the five-year limitations period and are not barred. *See* Ohio Rev. Code § 2923.32(K).

### 9. Summary

The Court has found that Claim One under § 17 of the Securities Act, Claim Two under the Ohio Securities Act, Claim Three under § 10(b) of the SEA, Claim Four under Chapters 1313 and 1336 of the Ohio Revised Code, and Claim Six under § 1336.05(B) are barred by the applicable statutes of limitations. In addition, on Claim Nine, the Court has found that the RICO claims relating to conduct which was discovered by May of 1990 are barred by the statute of limitations. On Claim Ten, the Court has found that the claims under Ohio Revised Code § 2923.32 based upon conduct discovered by May of 1990 are also barred by the statute of limitations. The Court has also found that Mr. James's claims under § 1701.95 in Claims Six and Seven fail to state a claim upon which relief can be granted and must be dismissed.

Claim Six under § 1313.56, § 1336.05(A), and § 1336.04(A) may continue against all Defendants. Claims Nine and Ten may continue against all Defendants for conduct alleged in the Fall of 1991.

### B. *Failure to State a Claim or to Produce Evidence in Support of Claims*

### 1. Claim Five: Fraud on the bankruptcy trustee

In Claim Five, Mr. James alleges that throughout 1990 and 1991, Defendants provided false information to the bankruptcy trustee regarding the financial status of ACMV. Mr. James alleges that in reliance on this false information, the trustee sold a $145,000 promissory note owing to Timothy McCoy from ACMV for $5,100. Mr. James alleges that this conduct violated 28 U.S.C. § 1503, 11 U.S.C. § 523, 11 U.S.C. § 727, and § 10(b) of the SEA. Defendants argue that Claim Five

fails to state a claim upon which relief can be granted.

■ The first statute, 28 U.S.C. § 1503, provides that "[t]he United States Court of Federal Claims shall have jurisdiction to render judgment upon any set-off or demand by the United States against any plaintiff in such court." This statute sets forth a basis of jurisdiction of the United States Court of Federal Claims and clearly has no applicability in this case. It appears that Mr. James may have intended to allege obstruction of justice under 18 U.S.C. § 1503. However, the federal obstruction of justice statute is penal and does not created a private right of action. *See Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1482 (9th Cir.1997). Thus, Mr. James has failed to state a claim with this allegation.

The bankruptcy statutes cited by Mr. James, 11 U.S.C. §§ 523 and 727 set forth criteria for determining when a debt should be deemed nondischargeable. *See* 11 U.S.C. §§ 523, 727 (1993). Defendants argue that Mr. James has offered no authority that these statutes create a private right of action. Defendants also argue that the bankruptcy court has already found Timothy McCoy's debt to Mr. James to be nondischargeable. Mr. James also generally asserts that Defendants' fraudulent conduct resulted in harm to himself, and that as the sole beneficiary of the trustee in bankruptcy, he has the ability to bring a direct action to redress this harm. It appears that Mr. James seeks the avoidance of the sale of the promissory note owed by ACMV to Timothy McCoy. Defendants argue that only the trustee in bankruptcy has the authority to avoid the transaction under 11 U.S.C. § 549. *See* 11 U.S.C. § 549 (1993). For these reasons, Defendants contend that Mr. James has no cause of action under these statutes.

■ The Court agrees that Mr. James does not have a cause of action under these statutes. The first statute cited by Mr. James, 11 U.S.C. § 523(a)(2), states that a bankruptcy discharge does not discharge a debt which was obtained by fraud or false representations. *See* 11 U.S.C. § 523(a)(2) (1993). The second statute, 11 U.S.C. § 727(a)(3), provides that a bankruptcy court must grant the debtor a discharge unless the debtor has falsified or failed to keep records related to the debtor's financial condition or business transactions. *See* 11 U.S.C. § 727(a)(3) (1993). These statutes do not create a private right of action, but merely set forth the criteria that a bankruptcy court must follow in determining dischargeability of debts.

■ Even if these statutes created a private right of action, Mr. James has not shown that he would have a claim under the statutes. Claim Five relates to the bankruptcy trustee's sale of the trustee's $145,531.48 judgment against ACMV arising out of Timothy McCoy's transfer of ARC and ACMV's resulting liability to him. The bankruptcy statutes cited by Mr. James regulate the dischargeability of debts owed *by the debtor*, not to the debtor. *See* 11 U.S.C. §§ 523, 727. Thus, the statutes would not be applicable to a debt owed to Timothy McCoy by ACMV. If Mr. James's claim is based upon Timothy McCoy's debt to Mr. James, that debt has already been determined to be non-dischargeable by the bankruptcy court. *See James v. McCoy*, 114 B.R. at 501. For these reasons, the Court finds that Mr. James has failed to state a claim under 11 U.S.C. §§ 523 and 727. In addition, creditors do not have standing to invoke the trustee's avoidance powers without leave of court. *See In re Sinder*, 102 B.R. 978, 982–83 (Bankr.S.D.Ohio 1989). Thus, Mr. James may not invoke the avoidance powers of the bankruptcy trustee set forth in 11 U.S.C. § 549.

Mr. James also alleges that the actions of Teresa McCoy and ACMV constitute a violation of § 10(b) of the SEA and Rule 10b–5. Defendants assert that Mr. James was given notice and an opportunity to object in bankruptcy court to the sale of

the promissory note, but failed to file an objection. *See* 11 U.S.C. § 363 (1993). Defendants further argue that Mr. James has failed to state a claim under § 10(b) or Rule 10b–5.

As previously discussed, a private action brought pursuant to § 10(b) of the SEA must be brought within one year of discovery, and three years of the violation. *See Lampf,* 501 U.S. at 362, 111 S.Ct. 2773 (adopting limitations period set forth in 15 U.S.C. § 77m). The three year period is the outside limit for private causes of action. *See* 15 U.S.C. § 77m. Mr. James alleges that Defendants made misrepresentations related to the sale in 1990 and 1991. In addition, the Court takes judicial notice that the docket of bankruptcy division of this Court shows that the transaction was approved by the bankruptcy court on March 4, 1992, more than three years before this action was filed. The Court therefore finds that this § 10(b) claim is barred by the statute of limitations.

### 2. Claims Six and Eight: Fraudulent conveyance

In Claims Six and Eight, Mr. James alleges that in 1991 ACMV illegally sold its assets and used its available funds to pay loans that had been guaranteed by the individual Defendants with the intent· to prefer those creditors to Mr. James in violation of Chapters 1313 and 1336 of the Ohio Revised Code. (Compl. ¶¶ 35–37, 43; Pl.'s Mem. in Opp. at 9–10). Mr. James also alleges that Timothy McCoy fraudulently converted some of his assets to the other individual defendants. (Compl. ¶ 35).

In answers to interrogatories, Mr. James asserts that Defendants loaded jewelry, videotapes, VCRs, some furniture and appliances onto rental trucks (Pl.'s Ans. to Interrog. 22). However, he offers no admissible evidence to support this bare assertion. Further, he offers no evidence that the above items were owned by ACMV. Timothy McCoy's February 28, 1996 affidavit states that the week before Labor Day 1991, ACMV held a tent sale as it had done in previous years. (Timothy McCoy Aff. ¶ 1). The items were sold at a fair market price. (Timothy McCoy Aff. ¶ 2). Further, "[t]he remaining assets of The Appliance Center of Mt. Vernon were sold in September, 1991 at auction." (Timothy McCoy Aff. ¶ 3). Plaintiff proffers no admissible evidence to the contrary.

Mr. James asserts in his memorandum in opposition that the sale of ACMV's assets violated Ohio's Uniform Bulk Sales Act, Chapter 1306 of the Ohio Revised Code. Mr. James does not set forth this allegation in the Complaint, and Defendants correctly assert that a claim under Chapter 1306 must be brought within six-months of the sale. *See* Ohio Rev.Code Ann. § 1306.09 (Anderson 1993). The sales at issue took place 1991, and Mr. James was aware of the sales at that time. (Sept. 21, 1991 letter from Paul E. Spurgeon, Attach. to Pl.'s Mem. in Opp.). Any claim under Chapter 1306 is clearly barred by the statute of limitations.

Defendants argue that Mr. James has no standing to claim that ACMV transferred assets in preference of other creditors. Defendants assert that Mr. James was not a creditor of ACMV, and can not bring a claim under Ohio Revised Code § 1336.04. Defendants contend that at the time that the sale of ACMV assets took place. Timothy McCoy had no ownership interest in· ACMV. Defendants further argue that even if Mr. James has a claim against ACMV, the public sale of ACMV's assets could not be deemed a fraudulent transfer. In addition, Defendants claim that Mr. James himself purchased many of the items offered for sale at the public sale, and that it is unjust to permit Mr. James to object to the transfer of items which he negotiated to purchase. (Timothy McCoy Aff. ¶ 4, Defs.' Ex. D).

Mr. James argues that he may bring claims against all Defendants pursuant to the "de facto merger" doctrine. Mr. James cites *Rath v. Rath Packing Co.,* 257 Iowa 1277, 136 N.W.2d 410 (1965), for the

proposition that the de facto merger doctrine is available to creditors prejudiced by an asset sale. Mr. James also argues that Ohio courts have followed a series of cases known as the *"Glenneagles* cases" which demonstrate that the transactions at issue constitute a fraudulent conveyance regardless of whether ACMV obtained a reasonable price for the items sold at the public sales. Defendants argue that the authorities cited by Mr. James do not support his assertions.

■ The Court agrees that *Rath* does not apply in this case. In *Rath*, a corporation attempted to avoid the requirements of a corporate merger statute that required that a two-thirds vote of shareholders approve a merger, and accorded appraisal rights to dissenters. *See* 136 N.W.2d at 417. The corporation tried to avoid the requirements by labeling the transaction as something other than a merger. The Iowa Supreme Court held that where a corporate combination is in legal effect a merger or consolidation, even if otherwise labeled by the parties, courts treat the transaction as a de facto merger and apply the corporate merger statute. Mr. James does not argue that he is a shareholder of ACMV who is entitled to certain rights accompanying a merger, and *Rath* does not stand for the proposition that the de facto merger doctrine "is available to creditors prejudiced by an asset sale." (Pl.'s Mem. in Opp. at 10). Thus, the holding in *Rath* is not applicable. Mr. James must produce evidence supporting his Chapter 1336 claims against Defendants.

Section 1336.04 of the Ohio Revised Code provides that certain "transfer[s] made or . . . obligation[s] incurred by a *debtor"* are "fraudulent as to a *creditor."* Ohio Rev.Code Ann. § 1336.04(A) (Anderson 1993) (emphasis added). A debtor is defined as "a person who is liable on a claim" and a creditor is "a person who has a claim." Ohio Rev.Code Ann.

§§ 1336.01(D) and 1336.01(F) (Anderson 1993). A "claim" is a "right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." Ohio Rev.Code Ann. § 1336.01(C) (Anderson 1993). Defendants argue that Mr. James had a right to payment from Timothy McCoy, but not against ACMV, and does not have a claim against ACMV under Chapter 1336.

■ Mr. James has not offered any evidence that he has a right to payment from ACMV and has therefore failed to show that he has a "claim" against ACMV under the definition set forth in § 1336.01(C). Thus, Mr. James has failed to demonstrate that he is "creditor" of ACMV or that ACMV is a "debtor" in relation to him under Chapter 1336. Mr. James has, however, alleged facts showing that he is a "creditor" of "debtor" Timothy McCoy. He has not, however, alleged what assets Timothy McCoy transferred, who owned those assets, or to whom he transferred them.[4] Mr. James has therefore failed to plead this fraudulent conduct with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure. See Fed.R.Civ.P. 9(b). The Court therefore finds that Mr. James has failed to state a claim against Timothy McCoy and has failed to produce evidence in support of his Chapter 1336 claims against Defendants other than Timothy McCoy. The Court therefore finds that Defendants are entitled to judgment on the Chapter 1336 claims asserted in Claims Six and Eight.

Mr. James also argues that ACMV's sale of assets was a fraudulent transfer under Ohio Revised Code § 1313.56. Like Section 1336.04, Section 1313.56 provides that a "creditor" may bring suit against its "debtor" to declare certain fraudulent transactions void. Ohio Rev.Code Ann. § 1313.56. As previously discussed, Mr. James has

---

4. Timothy McCoy did fraudulently transfer assets he owned prior to his bankruptcy. Claims regarding these fraudulent transfers are barred by the statutes of limitations.

not offered any evidence that he is a creditor of ACMV, or that ACMV is a debtor in relation to Mr. James. Mr. James has alleged that he is a creditor of Timothy McCoy. Mr. James has not, however, stated this fraud claim with particularity. See Fed.R.Civ.P. 9(b). The Court finds that Mr. James has failed to state a fraud claim under § 1313.56 against Timothy McCoy or to produce evidence to support these claims against the other Defendants, and Defendants are therefore entitled to judgment on these claims.[5]

### 3. Claim Nine: Federal RICO Violations

Defendants argue that the Complaint fails to state a cause of action under RICO because Mr. James has failed to allege the elements necessary to state a *prima facie* RICO claim. Mr. James does not specifically identify which subsections of 18 U.S.C. § 1962 Defendants have allegedly violated. Defendants argue, however, that the complaint fails to state a cause of action under any of the subsections of the statute.

Subsection (a) of 18 U.S.C. § 1962 provides:

It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce....

18 U.S.C. § 1962(a) (1984). The Sixth Circuit has held that in order to state a claim under § 1962(a), a plaintiff must plead a specific injury caused by the investment of income into the racketeering enterprise, distinct from any injuries caused by the

predicate acts of racketeering. *See Vemco, Inc. v. Camardella*, 23 F.3d 129, 132 (6th Cir.1994); *Craighead*, 899 F.2d at 494.

In *Vemco*, the Sixth Circuit held that the plaintiff had failed to state a claim under § 1962(a) when the complaint alleged only that the defendants reinvested in their enterprise income derived from their racketeering activities against the plaintiff. *See* 23 F.3d at 133. The plaintiff had alleged only an injury arising out of the predicate acts of racketeering, and not an injury stemming from the reinvestment. *See id.* Because the allegations were insufficient as a matter of law, the plaintiff's § 1962(a) RICO claim was dismissed. *See id.*

Defendants argue that Mr. James's complaint does not allege that he was injured as a result of Defendants' alleged investment of income derived from racketeering activity. The complaint alleges that "Defendants violated 18 U.S.C. § 1962 ... [b]y using income derived from the above described pattern of racketeering activity in the operation of the enterprise." (Compl.¶ 48). Defendants argue that Mr. James has not alleged that he was injured by the alleged investment, but only that he was damaged by the underlying acts of fraud and conspiracy which constitute predicate acts.

 Mr. James argues that he was harmed by reinvestment when ARC's assets were invested in ACMV for little consideration, and that the transfer from Timothy McCoy to ACMV made the debt owed to him by Timothy McCoy uncollectible. This Court has held that the conduct discussed in the bankruptcy court's order of May 10, 1990, including the sale of ARC's assets from Mr. James to Timothy McCoy, and from Timothy McCoy to ACMV, may not be used to support Mr. James's RICO claims because the conduct is outside of the limitations period. Mr. James was

---

**5.** The complaint alleges that the property sold or transported to Kansas was owned by ACMV. The only person with a claim against ACMV is the bankruptcy trustee who held a

judgment against ACMV. Mr. James has no cause of action arising out of the trustee's judgment against ACMV.

aware of this pattern of activity more than four years before he filed this action. *See Agency Holding Corp.*, 483 U.S. at 156, 107 S.Ct. 2759. Accordingly, Mr.. James may not assert this conduct as part of his RICO claim. *See Klehr*, 117 S.Ct. at 1989. Mr. James has not asserted any other injury resulting from reinvestment, and the Court therefore finds that the Complaint fails to state a claim under 18 U.S.C. § 1962(a).

As to subsections (b) and (c) of § 1962, Defendants argue that Mr. James has failed to allege facts showing the existence of a "pattern of racketeering activity" as required by both subsections. 18 U.S.C. §§ 1962(b), (c) (1984). A "pattern of racketeering activity" is defined under RICO as "at least two acts of racketeering activity, . . . the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5) (1984). The Supreme Court has held that RICO plaintiffs are required not only to allege two acts of racketeering, but to show that the acts together exhibit "relatedness" and "continuity." *See H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989).

■ The relatedness requirement is satisfied by alleging " 'criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.' " *Id.* at 240, 109 S.Ct. 2893 (quoting 18 U.S.C. § 3575(e)). Continuity refers either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition. *See* 492 U.S. at 241, 109 S.Ct. 2893. To show continuity over a closed period, a plaintiff must allege a series of related predicate acts extending over a substantial period of time. *See id.* at 242, 109 S.Ct. 2893. A period of a few weeks or months does not satisfy this requirement. *See id.* If the plaintiff cannot established an extended closed period, the

plaintiff must show a threat of continued activity. *See id.*

Mr. James has alleged the following predicate acts of racketeering activity: (1) mail fraud in violation of 18 U.S.C. §§ 1341 and 1962 through the use of mail in the conduct of affairs of ACMV and through communications with Mr. James; (2) wire fraud in violation of 18 U.S.C. §§ 1342 and 1962 by multiple use of telephone wire to plan and execute the business of ACMV and related businesses; (3) securities fraud in violation of 18 U.S.C. § 1961(1) as alleged in Claims One and Three; (4) obstruction of justice in violation of 18 U.S.C. § 1503 as stated in the opinion in *James v. McCoy;* (5) fraud on the bankruptcy court in violation of 11 U.S.C. §§ 523(a) and 727(a)(3) as determined in *James v. McCoy;* (6) transporting property illegally converted to the use of Defendants in violation of 18 U.S.C. §. 2314; (7) misrepresentations to the trustee in bankruptcy, in violation of 18 U.S.C. § 1503 and 18 U.S.C. § 1961(1)(D); and (8) fraud against Farmer's Insurance Group in violation of 18 U.S.C. §§ 659 and 1503.

The first and second asserted predicate acts allege mail and wire fraud. In the body of the complaint, Mr. James alleges that "[t]he four individual defendants conspiring and together, utilized the telephone and mail in communication in interstate commerce to obtain the business ARC from Richard James in conjunction with the issuance of a promissory note by Timothy McCoy." (Compl.¶ 16). This allegation relates to fraudulent conduct set forth in the bankruptcy court's Order of May 10, 1990, and may not be used to support Mr. James's RICO claim. *See Klehr*, 117 S.Ct. at 1991. In the only other reference in the complaint to mail or wire fraud, Mr. James alleges the following:

46. In the course of this scheme and conspiracy to defraud Richard James, the five defendants used the instrumentalities of interstate commerce, telephone wires, [and] the mail, conducting communications across interstate lines.

47. The conspiring Defendants used the enterprises to engage in a pattern of racketeering activity for which the predicate acts include the following:

a. The commission of mail fraud in violation of 18 U.S.C. § 1341 and § 1962 through the use of mail and the conduct of the affairs of ACMV and through the communications with Plaintiff.

b. Commission of wire fraud in interstate commerce in violation of 18 U.S.C. § 1342 and § 1962 by multiple use of the telephone wire to plan and execute the business of ACMV and related businesses.

(Compl.¶¶ 46–47).

■ To state a claim of mail or wire fraud, the plaintiff must allege a scheme to defraud and the use of mail or wires to execute the scheme to defraud. *See Gould, Inc. v. Mitsui Mining & Smelting Co.*, 750 F.Supp. 838, 842 (N.D.Ohio 1990) (citing *Morda v. Klein*, 865 F.2d 782, 785 (6th Cir.1989)). In addition, allegations of mail and wire fraud must be stated with particularity in accordance with Rule 9(b) of the Federal Rules of Civil Procedure. *See Van Dorn Co., Cent. States Can Co. Div. v. Howington*, 623 F.Supp. 1548, 1555 (N.D.Ohio 1985) (citing *Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir. 1984)). At a minimum, the complaint must set forth the circumstances constituting the fraud, including the time, place, and content of false representations, and the identity of persons making the misrepresentations. *See Van Dorn*, 623 F.Supp. at 1555. Paragraphs 46 and 47 of the Complaint do not contain any such allegations. The Court finds that Mr. James has failed to allege mail or wire fraud with particularity, and that these allegations may not be asserted as predicate acts supporting his RICO claim.

The third, fourth, and fifth alleged predicate acts are barred by the statute of limitations because they relate to a pattern of activity known to Mr. James by May of 1990. *See Klehr*, 117 S.Ct. at 1991. These

alleged predicate acts may not be used to support Mr. James's RICO action.

■ As the sixth predicate act, Mr. James has alleged that Defendants transported property illegally converted to their use across state lines in violation of 18 U.S.C. § 2314. Defendants deny that they illegally transported property across state lines or that they converted ACMV property to their own use. Defendants have offered evidence that they sold goods normally sold by ACMV at a tent sale the week before Labor Day in 1991. (Timothy McCoy Aff. ¶ 1). Defendants have also offered evidence that the remaining assets of ACMV were sold in September 1991 at a public action. (Timothy McCoy Aff. ¶ 3). Defendants contend that at both sales, all of the items were sold at the highest prices that the public was willing to pay. (Timothy McCoy Aff. ¶¶ 2, 5). Defendants have also offered evidence that the proceeds of the sales were paid to secured creditors of ACMV, and that none of the shareholders of ACMV personally profited from the tent sale or the public auction. (Timothy McCoy Aff. ¶ 6). Mr. James has offered no evidence in response to show that Defendants illegally converted property to their own use and transported the property across state lines in 1991. On a motion for summary judgment, the plaintiff may not rely upon the allegations in his complaint, but must produce evidence in support of his claims. *See* Fed.R.Civ.P. 56(e). Because Mr. James has offered no evidence in support of his claim that Defendants violated 18 U.S.C. § 2314, the Court finds that Defendants are entitled to summary judgment on this claim, and that Mr. James may not assert this conduct as a predicate act.

The Court has found that the first, second, third, fourth, fifth, and sixth predicate acts may not be considered in determining whether a pattern of racketeering activity has been alleged. Accordingly, when determining whether a pattern of racketeering activity has been alleged, the Court

will consider only the seventh and eighth alleged predicate acts.

The Court must first determine whether the alleged predicate acts are related for the purposes of RICO. The Court must consider whether the alleged acts have the same or similar purposes, results, participants, victims, or methods of commission. *See H.J., Inc.*, 492 U.S. at 240, 109 S.Ct. 2893. The seventh allegation of fraud and obstruction of justice for misrepresentations to the trustee in bankruptcy are alleged to have been committed by Timothy and Teresa McCoy and other agents of ACMV. Mr. James alleges that Defendants misrepresented the financial condition of ACMV. The misrepresentations were made for the purpose of depriving Mr. James of his ability to collect on the debt owed to him by Timothy McCoy.

 As the eighth alleged predicate act, Mr. James alleges that Timothy McCoy engaged in fraud against Farmers Insurance Group by filing a false claim of theft of personal property.[6] The Court finds that this predicate act is not related to the other alleged predicate acts for purposes of RICO. The insurance company, not Mr. James, was the victim of this alleged fraud. The purpose of the alleged fraud was to obtain a fraudulent insurance payment, not to prevent a creditor from collecting on a debt. Further, Timothy McCoy is the only Defendant alleged to have participated in this conduct. For these reasons, the Court finds that the eighth alleged predicate act is not related to the seventh predicate act, and that these alleged acts do not constitute a pattern of racketeering activity for purposes of RICO. Because Mr. James has not alleged facts demonstrating a pattern of racketeering activity, the Court holds that Mr. James as failed to state a RICO claim under Rule 12(b)(6). *See* Fed.R.Civ.P. 12(b)(6).

 Even if the Court were to assume that there were two predicate racketeering acts committed within the four year statute of limitations period, Plaintiff's RICO claim must fail because he offers proof of no injury resulting from those criminal acts which is separate and distinct from the injury he suffered when Timothy McCoy fraudulently induced him to transfer ARC's assets to him in 1985. *See Klehr*, 117 S.Ct. at 1990–91. When Timothy McCoy defaulted on the promissory note, Mr. James' loss was complete. He has reduced Timothy McCoy's and ACMV's unlawful conduct to judgment. The further criminal acts alleged do not inflict new injury on Mr. James. His injury was complete and he had knowledge of the injury prior to the bankruptcy court's May 10, 1990 judgment.

Finally, Mr. James's entire RICO claim focuses on one business transaction in April 1984 and Defendants fraud inducing him to enter the transaction and depriving him of the full benefit of the contract he entered with Timothy McCoy. Assuming Defendants' alleged criminal acts leading up to this one business transaction and continuing through the date of default and Mr. James's (and the bankruptcy trustee's) debt collection activities are all related, I conclude that Plaintiff has failed to offer evidence which would establish the required continuity. *See Vemco*, 23 F.3d at 134 (*Held:* Continuity not established when there is a single fraudulent scheme to misrepresent a guaranteed price in a building contract and later extort a higher price).

### 4. Claim Ten: Ohio's corrupt activity statute

Plaintiff's tenth claim asserts a violation of Ohio's corrupt activity statute, Ohio Revised Code § 2923.32. The Ohio statute is modeled after the federal RICO statute.

**6.** Mr. James makes this allegation in the alternative, asserting that Timothy McCoy either lied to the trustee in bankruptcy regarding his assets or lied to the insurance company about the theft. To the extent that this predicate act alleges misrepresentations to the bankruptcy trustee, the allegation has been addressed in the seventh alleged predicate act.

*See State v. Thrower,* 62 Ohio App.3d 359, 575 N.E.2d 863, 870 (1989). Several Ohio appellate courts have used federal RICO case law to construe the Ohio racketeering statute. *See, e.g., id.; State v. Giffin,* 62 Ohio App.3d 396, 575 N.E.2d 887, 890 (1991). Defendants argue that Plaintiff's complaint fails to establish two of the elements necessary to set forth a prima facie violation of Ohio Revised Code § 2923.32. First, Defendants argue that Mr. James has failed to allege a predicate act of racketeering that occurred after the effective date of the statute. Second, Defendants argue that Mr. James has failed to allege facts sufficient to demonstrate a pattern of corrupt activity as required by the statute.

Ohio Revised Code § 2923.32(E) defines a pattern of corrupt activity as:

> two or more incidents of corrupt activity ... that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event.

> At least one of the incidents forming the pattern shall occur on or after January 1, 1986.... [T]he last of the incidents forming the pattern shall occur within six years after the commission of any prior incident forming the pattern ...

Ohio Rev.Code Ann. § 2923.31(E) (Anderson 1993).

Defendants argue that Plaintiff has not alleged a pattern of corrupt activity because his allegations relate to the purchase of ARC, which took place before January 1, 1986. However, it appears that Plaintiff's allegations also relate to conduct which occurred during Timothy McCoy's bankruptcy proceeding, which did not commence until 1988. The Court finds that Mr. James has alleged incidents occurring after January 1, 1986.

Defendants also argue that the Complaint fails to allege facts sufficient to show a "pattern of corrupt activity" under § 2923.31 because the facts alleged do not demonstrate relationship and continuity. Some Ohio courts have held that the Ohio statute requires a showing of relationship and continuity, as required under RICO. *See, e.g., State v. Haley,* No. 90–CA–79, 1994 WL 107124, at *10 (Ohio Ct.App. Mar. 30, 1994).

Mr. James alleges the following incidents of corrupt activity: (1) conduct alleged to constitute racketeering activity under his RICO claim; (2) perjury in violation of Ohio Revised Code § 2921.11; (3) tampering with evidence in violation of § 2921.12; (4) obstructing justice in violation of § 2921.32; (5) fraud in the purchase and sale of securities in violation of Ohio Revised Code §§ 1707.44(B), (C)(4), (D), (E), and (F); (6) theft in violation of § 2913.02; (7) insurance fraud in violation of § 2912.47; and (8) receiving stolen property in violation of § 2913.51.

As part of the § 2923.32 claim, Mr. James incorporates his RICO allegations.[7] On the conduct alleged under the RICO claim, the Court has found that all of the predicate acts except for the seventh and eighth fail to state a claim or are barred. Only the seventh and eighth predicate acts of the RICO claim will be considered as part of Mr. James's § 2923.32 claim.

As to the violations of state law, the fifth and seventh allegations of corrupt activity are claims of fraud which must be alleged with particularity pursuant to Rule 9(b). *See* Fed.R.Civ.P. 9(b). Mr. James has failed to allege with particularity the facts supporting these allegations, and he has therefore failed to state a claim for these allegations of corrupt activity.

■ It appears that the sixth and eighth allegations of theft and receiving stolen property relate to the sale of ACMV's assets. As discussed in relation to the RICO claims, Defendants have offered evidence that Defendants legitimate-

---

7. The Ohio statute defines "corrupt activity" to include "racketeering activity" as defined under RICO. *See* Ohio Rev.Code Ann. § 2923.31(I) (Anderson 1993).

ly sold ACMV's assets at a tent sale and public auction. (Timothy McCoy Aff. ¶¶ 1–5). Defendants have also offered evidence that the proceeds from these sales were put towards ACMV's debts, and that the individual Defendants did not benefit personally from the sales. (Timothy McCoy Aff. ¶ 6). Mr. James has offered no evidence to contradict Defendants' assertions. On a motion for summary judgment, a plaintiff cannot rely on the allegations in his complaint, but must submit evidence in support of his claims. *See* Fed.R.Civ.P. 56(e). Mr. James has failed to produce evidence on these claims, and Defendants are therefore entitled to judgment on this § 2923.32 claim to the extent it is based upon these allegations. These allegations may not be considered as part of Defendants' alleged pattern of corrupt activity. The Court will consider the remaining second, third, and fourth allegations of corrupt activity along with the seventh and eighth allegations of racketeering activity in the RICO claim.

The court assumes that the second, third, and fourth allegations of perjury, tampering with evidence, and obstructing justice relate to Defendants' alleged misrepresentations to the trustee in bankruptcy. These are the same allegations set forth as the seventh predicate act of the RICO claim. The eighth predicate act of the RICO claim refers to an alleged false claim filed with Farmer's Insurance Group. The Court has found that the seventh and eighth predicate acts of the RICO are not related, and thus cannot constitute a pattern under RICO. *See H.J., Inc.*, 492 U.S. at 240, 109 S.Ct. 2893. Because the second, third, and fourth allegations of corrupt activity are the same allegations in the seventh predicate act of racketeering activity, the Court finds that the eighth predicate act is not related to the alleged misrepresentations to the bankruptcy trustee. Because these acts are not related, the Court finds that the eighth predicate act of the RICO claim does not form a pattern of corrupt activity. *See Haley*, 1994 WL 107124, at *10.

To the extent that the second, third, and fourth allegations of corrupt activity and the seventh predicate act of racketeering activity may be considered to be related acts, the Court finds that the acts are so closely related and connected that they constitute a single event. Ohio's definition of a pattern of corrupt activity requires that the acts of corrupt activity may not be "so closely related to each other and connected in time and place that they constitute a single event." Ohio Rev. Code Ann. § 2923.31(E). Because these acts constitute a single event, they cannot constitute a pattern of corrupt activity under Ohio law.

In addition, as discussed in relation to Mr. James's RICO claim, Mr. James has not suffered an injury subsequent to the initial fraud in 1985, and Mr. James was aware of this injury and the source of the injury more than five years before this action was filed. Further, even if Mr. James had shown related corrupt activities, the Court finds that Mr. James has not established the required continuity. *See Vemco*, 23 F.3d at 134.

The Court finds that Mr. James has failed to allege or produce evidence of a pattern of corrupt activity within the statute of limitations period, and that Defendants are therefore entitled to judgment on this claim.

### C. *Claim Preclusion*

Defendants argue that all claims against Timothy McCoy are barred by the doctrine of res judicata because all ten causes of action could have been raised during the adversary bankruptcy proceeding. Because the Court has found that Defendants are entitled to judgment on all claims, the Court need not make this determination.

## II. PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Mr. James argues that he is entitled to judgment as a matter of law on his RICO

claim. The Court has found that Defendants are entitled to judgment on the RICO claim for failure to state a claim and for failure to produce evidence in support of his claim. Mr. James has failed to produce evidence demonstrating as a matter of law that Defendants have engaged in a pattern of racketeering activity. Mr. James' motion is without merit and is denied.

## III. CONCLUSION

The Court has found that Claims One, Two, Three, and Four are barred by the applicable statutes of limitations. The Court has further found that Claims Five, Six, Nine, and Ten are barred at least in part by the applicable statues of limitations. The Court has also found that to the extent that Claims Five, Six, Seven, Eight, Nine and Ten are not barred by statutes of limitations, Mr. James has failed to state a claim upon which relief can be granted or has failed to produce evidence demonstrating a genuine issue of material fact in support of his claims. Accordingly, Defendants' March 6, 1996 motion for summary judgment (Doc. 13) is **GRANTED.**

Plaintiff's February 20, 1996 motion for partial summary judgment (Doc. 10) is hereby **DENIED.** Defendants' September 26, 1997 motion for leave to file a supplemental memorandum (Doc. 33) is **GRANTED.**

The Clerk of Court is hereby **DIRECTED** to enter **JUDGMENT** in favor of Defendants.